SINGLETON v. ST. LOUIS MUTUAL INSURANCE CO. *et al.*, *Appellants.*

1. **Insurable Interest**: UNCLE AND NEPHEW. A policy of insurance procured by one upon the life of another, for the benefit of the former, who has no pecuniary interest in the continuance of the life insured, is against public policy and void. The mere relation of uncle and nephew does not constitute an insurable interest, to enable either to insure the life of the other; *Held*, therefore, where an uncle insured the life of his nephew for his own benefit without having any pecuniary interest in his life, that the policy was void.

   **The burden of proving** an insurable interest in the life of the assured lies upon him who claims the insurance.

2. **Life insurance**: EVIDENCE: SPITTING OF BLOOD. In a suit upon a policy of insurance procured by one upon the life of another, for the purpose of showing what was the condition of the latter, when he made his application for insurance, statements made by him which were expressions of his feelings at the time are admissible in evidence, provided they were not made too long before the application to throw light upon the subject. But such statements of his as may have related to prior ill health, are not admissible.

   **Parol evidence** is admissible to show in what sense the term "spitting of blood." is used in an application for life insurance.

| 66 | 63 |
|----|----|
| 100 | 46 |
| 66 | 63 |
| 47a | 343 |
| 66 | 63 |
| 109 | 575 |
| 66 | 63 |
| 56a | 33 |
| 66 | 63 |
| 88a | 685 |
| 66 | 63 |
| 101a | 634 |
| 66 | 63 |
| 99a ¹ | 93 |

*Appeal from Audrain Circuit Court.*—HON. G. PORTER,
Judge.

This was an action on a policy of insurance on the
life of John T. Anderson, deceased, payable to the plain-
tiff on the death of Anderson. The policy was issued on
the 12th of December, 1872, and Anderson died on the
20th of April following. The defense was fraud on the
part of the plaintiff in procuring the certificate of the
medical examiner and the policy, and false representations
as to the health of Anderson. The application, on which
the policy was issued, contained among others, the follow-
ing questions and answers: 12. Has the party had, since
childhood, consumption, bronchitis, spitting of blood, *
* and if so, which? Answer, No. 15. Has the party
now, or has he had an habitual cough, or any pulmonary
disease, or is any suspected? Answer, No. 18. Is the
party now in good health, and free from any symptoms of
disease? Answer, Yes. It was one of the conditions of
the policy that unless all the answers in the application
were true, the policy should be void. The policy was by
its terms, payable to John S. Singleton (the plaintiff) cred-
itor, uncle of said John T. Anderson. At the trial Dr.
Adams, a witness for defendant, testified that he saw An-
derson in the summer of 1872, but did not observe his con-
dition. Defendant's counsel asked what Anderson said to
him at that time about his condition, to which plaintiff ob-
jected on the ground that it was hearsay, and that witness
did not observe his condition. The court sustained the
objection. The witness was further asked what statements
Anderson made to him at the time he examined him in the
spring of 1872, as to his condition and symptoms prior to
that time, and as to his having in the past, had spitting of
blood or an habitual cough; but the court refused to per-
mit the questions to be asked, ruling that the witness could
detail the statements made to him by Anderson as to his
condition and symptoms at the time he saw and examined

him, but not as to his condition at any previous time. Similar questions were also asked of one Hutton, who was not a physician, with like result.

Doctors Ford, Hill, Lee and French, witnesses for the plaintiff, were permitted by the court, against the objections of the defendant, to testify that " spitting of blood" is a medical term, and means spitting of blood from the lungs; and that spitting of blood from the mouth, throat, stomach or nose, is not called by that name by doctors, or in medical books.

The following, among other instructions, asked by defendant, were refused by the court: 10th. To entitle the plaintiff to recover in this action he must show some insurable interest in the life of Anderson, and in the absence of any evidence showing, or tending to show such insurable interest, the jury must find for defendants. 13th. If the jury believe from the evidence that Anderson had at the date of the application, or had had at any time previous thereto since childhood, spitting of blood, from whatever source it originated, they will find for defendants. There was a verdict and judgment for plaintiff, and defendant appeals.

*Henry Flanagan* for appellant.

The question of insurable interest has been before this court several times, and while the decisions seem to differ as to degree or kind of interest necessary to support a policy on the life of another, they are all agreed that unless the beneficiary has some interest in the life of the assured, the policy is void, being a mere wagering contract. *McKee v. Ins. Co.,* 28 Mo. 383; *Charter Oak Ins. Co. v. Brant,* 47 *id.* 419; *Gambs v. Ins. Co.,* 50 *id.* 44; *Chisholm v. Ins. Co.,* 52 *id.* 213 ; *Evers v. Life Association,* 59 *id.* 429.

The Federal decisions and the decisions of our sister States, with the exception of New Jersey (*Trenton Ins. Co. v. Johnson,* 4 Zab. R. 577,) are uniform, that no person can procure a valid insurance on the life of another unless he

has an interest in such life. *Lord v. Dall*, 12 Mass. 115; *Loomis v. Eagle Life and Health Ins. Co.*, 6 Gray 396; *Mitchell v. Union Life Ins. Co.*, 45 Me. 104; *Lewis v. Phœnix M. Ins. Co.*, 39 Conn. 100; *Mowry v. Home Life Ins. Co.*, 9 R. I. 346; *Franklin Life Ins. Co. v. Hazzard*, 41 Ind. 116; *Guardian Mut. Life Ins. Co. v. Hogan*, 80 Ill. 35.

While the reciprocal relations of parent and child, and brother and sister have been held, under special circumstances, sufficient to support the contract, there is no decision to be found, in which the mere relation of uncle and nephew has been held sufficient, without other interest in the life of the assured. A man has not an insurable interest in the life of his brother, merely as such, nor has a nephew in the life of his uncle. If a nephew has not an insurable interest in the life of his uncle, *a fortiori* an uncle has not in the life of his nephew. The relationship which implies interest is such only as creates a claim upon the person whose life is insured. An uncle has no claim upon his nephew by reason of their consanguinity.

The declarations offered to be proved were made in May, in the summer, in October and in November of the year 1872. The policy was issued on the 12th of December following. The declarations related to the health of Anderson, and tended to explain his physical condition at the time they were made. The real issue was the state of Anderson's health, at and prior to the time the assurance was applied for, and whether he had ever had certain diseases or affections. Under this issue the defendant had the right to show the condition of Anderson's health at any time during his life, since childhood. Therefore, any fact tending to prove that he had ever had any of the specified diseases, or that he was not in good health, or free from symptoms of disease at the date of the application, was relevant. *Aveson v. Kinnaird*, 6 East 188; *Ins. Co. v. Moseley*, 8 Wall. 397; *Harriman v. Stowe*, 57 Mo. 93; *Washington Life Ins. Co. v. Haney*, 10 Kan. 525; *Nat. Mut. Life Ins. Co. v. Applegate*, 7 Ohio St. 392; *Evers v. Life As-*

*sociation,* 59 Mo. 429; *Swift v. Mass. Mut. Life Ins. Co.,* 63 N. Y. 186; *Kelsey v. Universal Life Ins. Co.,* 35 Conn. 225; May on Ins., § 214, p. 226.

The term "spitting of blood" requires no interpretation. The words are plain and familiar, and in no sense technical. The applicant having answered falsely, and thus violated his contract, it was error to allow the plaintiff to introduce evidence restraining or limiting the scope of the question. (*Geach v. Ingall,* 14 M. & W. 95.) No matter what organ the blood came from, the defendant was entitled to a truthful answer. *Campbell v. N. E. M. L. Ins. Co.,* 98 Mass. 381; 1 Green. Ev. §§ 277, 278; 1 Chitty Contracts (11 Am. Ed.) 113; Broom's Leg. Max. 890.

Admitting that the term may have the technical meaning contended for by the respondent, when used by physicians, it does not follow that such was the sense in which it was used by the parties. If extrinsic evidence became necessary to interpret any phrase in the contract, or any term employed there, it ought to have been directed to the intention of the parties, and to the sense attached by them to the language of the contract. The meaning of the particular words, as understood by medical men, was insufficient without some proof that the parties attached the same meaning to them, or that they were usually employed in insurance contracts in that particular sense. *Kirchner v. Venus,* 12 Moore, P. C. R. 361; *Robertson v. French,* 4 East 135; *Pohalaski v. Ins. Co.* 45 How. Pr. 504; S. C., 56 N. Y. 640.

*McFarlane, Jones & Carkener* for respondent.

I. No interest in the life of Anderson in favor of plaintiff was necessary as a matter of law, to validate the policy. Life Insurance is not a contract of *indemnity,* but a mere contract to pay a certain sum of money on the death of a person, in consideration of the due payment of certain annual premiums during life. The contract of life in-

surance is essentially a *wager* contract, and the wager is lawful at common law.   *Dalby v. The India and L. Life I. Co.*, 15 Com. Bench 365; *British Ins. Co. v. Magee, Cook & Alcock*, Repts. (Irish) 182; *Scott v. Roose, Long. & Town.* (Irish) 54; *Shannon v. Nugent*, 1 Hays R. 536–539; Bunyan on Life Insurance, p. 11; *Law v. London Indisputable L. P. Co.*, 1 Kay & Johnson, 223; *Rawls v. Ins. Co.*, 3 American Law Reg. (N. S.) see note of Judge Dwight at page 179, par. 2, *et seq.*; Bliss on Life Insurance, sec. 3; *Trenton Mutual L. I. Co. v. Johnson*, 4 Zab. (N. Jersey) 576; *Chisholm v. Nat. Cap. L. I. Co.*, 52 Mo. 213.

2d.   The position that public policy would avoid such contract was taken in the cases cited above—especially the Irish cases, also in the English cases prior to the statute requiring an interest, and was rejected. · See cases cited above, and *Crawford v. Hunter*, 8 Term R. 13; *Buchanan v. Ocean Ins. Co.*, 6 Cow. 318.

This argument, if good at all, would cut up life insurance by the roots; for the temptation where there is an interest, especially a pecuniary one, would be perhaps quite as strong to bring about the event insured against, as where none existed.   See note Judge Dwight par. 2, p. 180–81, American Law Register (N. S.) vol 3.   But this is a theoretical question in this case, as far as the *fact* of an "interest is concerned," since the policy itself recites that plaintiff was a *creditor*, and also an uncle of the assured.

3d.   But if it be held that plaintiff must have an interest in the life assured, in order to validate the policy, it would seem plain that generally, and especially in this case, where the issuing of the policy stands admitted by defendants, and upon its face the policy expressly affirms that plaintiff had an interest—was a creditor, and was the uncle of the assured, the want of such interest would be, upon every principle of logic and good pleading, a matter of defense.

As settled in the Chisholm case, the absence of an interest in the life assured on the part of the beneficiary, will

avoid the policy (if it have that effect at all) only on the grounds of public policy. Now the law does not presume that any contract fair on its face is illegal and void for any cause whatever. The extrinsic matter making it so must be pleaded by defendant. Especially is this so with defenses based on public policy. *Peltz v. Long,* 40 Mo. 532; *Sumner v. Summers,* 54 Mo. 340; *Cheltenham v. Cook,* 44 Mo. 29; *Sherwood v. Saxton,* 63 Mo. 78–84; *Gardner v. Armstrong,* 31 Mo. 535; *Shannon v. Nugent,* 1 Hays 536; *Lewis v. Phœnix M. Ins. Co.,* 39 Conn. 100.

4th. But the company having asked questions on this subject and received answers, and acted on them and issued the policy, wherein it is affirmatively set out that plaintiff had an interest—was a creditor, the company has thereby shifted the burden of proof upon its own shoulders, as the maker of a note does by the "value received." The burden is on the defendant to show the falsity of the answers given to questions asked by the company. *Piedmont & Arlington L. I. Co. v. Ewing,* 3 Central Law Jour. 686; *Evers v. Life Asso. America,* 59 Mo. 431.

II. There was no error in the exclusion of the alleged statements of deceased, which were mere recitals of antecedent events, or of his prior condition. That his declarations made to a witness at any particular time, as to his then condition, when such declarations were accompanied with some observation by the witness of signs of ill health in the assured, are admissible as a part of the *res gestae,* the circuit court ruled, and all such testimony offered by defendants were received. This is the farthest extent to which the authorities go. See *Marr v. Hill,* 10 Mo. 320; *Wadlow v. Perryman,* 27 Mo. 279; *Harriman v. Stowe,* 57 Mo. 93; *Ladd v. Couzins,* 35 Mo. 513–516; 1 Greenleaf Ev. Sec. 110; *Swift v. Ins. Co.,* 63 N. Y. 186.

III. The court rightly permitted plaintiff in rebuttal to show that the words "spitting of blood" constitute a medical and technical term, and also the meaning of such term.

1st. No one can doubt, after an inspection of the question asked, that this was a medical term, among medical terms, denoting specific diseases. But plaintiff proved by physicians that it was such, and then proved the meaning of these words when used as such medical term. This was plaintiff's undoubted right. *Reid v. Piedmont Ins. Co.*, 58 Mo. 421; *Campbell v. N. E. Ins. Co.*, 98 Mass. at page 406; 1 Greenleaf Ev. sections 280 and 295; *Blair v. Corby*, 37 Mo. 313; *Price v. Phœnix Ins. Co.*, 17 Minn. page 517–18. Then it is left to the jury to say whether in this question these words were used in the sense of the technical term.

2d. To arbitrarily hold that this phrase (evidently a medical term with a distinct meaning) is not (even if the jury should find that it was so intended by the parties to the application) to be understood in the sense of such term, is to permit the company to lay a trap for the unwary, and to outrageously take advantage of its own wrong, in not asking the plain question: "Has he ever spit any blood?" if it required the applicant to answer as to any expectoration of blood. It is settled that a policy of insurance will be construed strictly against the company. "The language must be taken most strongly against the insurers, for it is their own language and for their own benefit. It shall not defeat the policy except in a case of plain necessity." May on Insurance, pp. 182-3, Secs. 175 and 176. "When the words are without violence susceptible of two interpretations, that which will sustain the policy, must in preference be adopted." *Westfall v. Hudson Ins. Co.*, 2 Duer 495; *Pelly v. Royal Ex. Co.*, 1 Burr. 341. "A construction must necessarily be excluded by the language used, to prevent the court from adopting it, if it will save the policy." *Westfall v. Hudson Ins. Co.*, 2 Duer at p. 495.

*R. W. Jones* for respondent.

The idea of a creditor's having pecuniary interest in the life of any free person, is absurd. The most that can

be said is, that there is a bare possibility of the creditor's getting more of his debt if the debtor live than if he die. It cannot be called even a probability, because this would depend, not only on his life, but on his habits, his trade or profession, and that peculiar talent which accumulates and saves money. There being no pecuniary interest in the life, there could be no pecuniary loss in the death. The same argument applies to the dependant relative. There is then nothing in the nature of the contract which requires an interest in the life. But the question of public policy arises. It would be against public policy to allow any contract which was in violation of law, or which would directly induce the commission of crime.

But do wager policies induce crime? There is no obligation in them relating to crime; no illegal consideration; nothing looking to crime; crime is not contemplated in them. A creditor has a policy on the life of an insolvent, improvident debtor. A creditor has a policy on the life of his debtor who afterward pays the debt. A wife or child takes insurance on the husband or father. Here the same inducements exist to commit crime as do exist in wager policies. Therefore, if public policy is against wager contract, it also prohibits these. But such contracts are permitted by the laws of this State. Therefore, wager policies, being no more inducive to the commission of crime than these, and the inducements being the same, are allowed here. There is nothing in logic to sustain the doctrine of insurable interest. The tendency of the courts, of late years, has been toward avoiding and doing away with it.

HENRY, J.—Plaintiff sued defendants on a policy of insurance issued by the St. Louis Mutual Life Insurance Company, on the life of John T. Anderson, procured by plaintiff, who paid the premiums, and was to receive the amount for which said life was insured by said company, on the death of said Anderson.

Plaintiff was an uncle of Jno. T. Anderson, but it was neither alleged nor proved by plaintiff, that he had any pecuniary interest in his life, and the mere relation of uncle and nephew does not constitute an insurable interest, to enable either to insure the life of the other. It is maintained with great ability by Messrs. McFarlane and Jones, attorneys for plaintiff, that a policy of insurance, effected by one on the life of another in which he has no pecuniary interest, is valid; and they rely upon *Chisholm v. Nat. Capitol Life Ins. Co.*, 52 Mo. 213, in which this court, Wagner, J., said: "In this State we have no statute on the subject covering this case, and as the policy is not void by the common law, it can only be declared so on the ground that it is against public policy. There is nothing to show that the contract was a mere wagering one, or that it is in anywise against or contrary to public policy." These remarks of course, are to be restricted to the case then under consideration. The plaintiff there had insured the life of Clark, between whom and herself there was a marriage engagement, and the court held that she had a pecuniary interest in the life of Clark, remarking that " had he observed and kept the same, (his contract of marriage) then, as his wife, she would have been entitled to support. Had he lived and violated the contract, she would have had her action for damages." There are intimations in the opinion which support the views urged by respondent's attorney, but they are *obiter dicta*. The case of the *Trenton Mut. Life and Fire Ins. Co. v. Johnson*, 4 Zab. 576, is approvingly cited by the court, but a different doctrine from that announced in that case has been held in Massachusetts, New York, Connecticut, Maine, Rhode Island, Indiana, by the Supreme Court of the United States, by Dillon, J., in *Swick v. Home Ins. Co.*, 2 Dillon 161, and in this State in *McKee v. Ins. Co.*, 28 Mo. 383. And in *Gambs v. Covenant Mut. Life Ins. Co.*, 50 Mo. 44, it was held indirectly that a person procuring an insurance on the life of another must, to make it valid, have a pecuniary interest in the life insured. In the latter

case, Bliss, J., said: "Gambling, or wager policies, are those where the persons for whose use they issue have no pecuniary interest in the life insured. But the wife has a direct interest in the life of her husband." In the former case, Scott, J.: "There is nothing in the contract as stated in the petition, which shows it to be a wagering one, or in anywise contrary to public policy."

He then proceeds to show, that the plaintiff had a pecuniary interest in the life of the husband, which she insured for her benefit. In *Evers v. The Life Association*, 59 Mo. 430, Wagner, J., who delivered the opinion of the court, did not seem entirely satisfied with *Chisholm v. Nat. Capitol Life Ins. Co.* He said: "Our opinion on this subject was expressed in *Chisholm v. Nat. Capitol Ins. Co.*, 52 Mo. 213, to some extent, but it is not necessary to examine the question further in this case, as the plaintiff's own instructions assume that such an interest is necessary." As the observations of our court on this subject, in the case referred to are *obiter dicta*, the question may be considered an open one in this State. In his Commentaries, 3 Vol., 462, Chancellor Kent, said: "But policies, without interest upon lives, are more pernicious and dangerous than any other class of wager policies, because temptation to tamper with life is more mischievous than incitement to mere pecuniary fraud." In *Lord v. Dall*, 12 Mass. 115, it was held "that unless the assured had an interest in the life insured, it would be a mere wager policy, which we think, would be contrary to our laws, and therefore void." In *Stevens adm'r v. Warren adm'x*, and another, 101 Mass. 564; *Lord v. Dall*, was cited and approved, and Willis, J., speaking for the court, said: "The general rule recognized by the courts has been that no one can have an insurance upon the life of another, unless he has an interest in the continuance of that life." To the same effect are the cases of *Mitchell v. Union Life Ins. Co.*, 45 Me. 104; *Lewis v. Phœnix Mut. Life Ins. Co.*, 39 Conn. 101; *Bevin v. The Con. Mut. Life Ins. Co.*, 23 Conn. 244; *Mowry v. Home Life Ins. Co*,

9 R. I. 346; *Franklin Life Ins. Co. v. Hays*, 41 Ind. 117; *Ruse v. Mut. Benefit Life Ins. Co.*, 23 N. Y. 516; *Freeman v. Fulton Fire Ins. Co.*, 38 Barb. 247; *Cammack v. Lewis*, 15 Wallace, 643; *Swick v. Home Ins. Co.*, 2 Dillon R. 161; May on Ins., sec. 587, page 724.

Neither the case of *Shannon v. Nugent*, Hays' Reports of cases in the Irish Court of Exchequer, page 539, nor *Ferguson v. Lomax*, 2 Drury & Warren's Reports of cases decided in the English High Court of Chancery, cited in *Chisholm v. Nat. Capitol Life Ins. Co.*, *supra*, sustains the doctrine contended for by respondent. In the latter case the question was neither considered by the court nor presented in the brief of counsel, and in the former, Joy, C. B., speaking for the court, said : " It is not now necessary for us to decide whether a life insurance, made in Ireland must be on interest." He stated, however, that the leaning of the court was, that interest was not necessary to give it validity. We feel constrained, therefore, by the weight of authority to hold that the policy of insurance procured by one upon the life of another, for the benefit of the former, who has no pecuniary interest in the continuance of the life insured, is against public policy, and therefore void. This policy upon its face, does not state an interest, nor in the application is it stated that Singleton had a pecuniary interest in the life of Anderson. The following question was propounded to the applicant: " Has the beneficiary. (if a creditor) an interest in the life to be assured, to the full amount of this application ?" To which he answered " No." He does not state that he is a creditor. It was neither averred, in the plaintiffs' petition nor proved, that plaintiff had any pecuniary interest in the continuance of the life of John T. Anderson. The following instruction, asked by defendant, the court refused: " That to entitle plaintiff to recover in this action, he must show some insurable interest in the life of John T. Anderson, the insured, and that in the absence of any evidence, showing, or

tending to show such insurable interest, the jury must find for defendant."

Plaintiff's counsel contend that it devolved upon defendant to show that plaintiff had no such interest, and several cases from our own reports are relied upon as authority for this position. In the earlier of these cases all that was determined was that when a contract was good at common law, without being reduced to writing, after the passage of the statute of frauds it was matter of defense to be pleaded that the contract was not in writing. The case here is of a contract void at common law, upon its face, and of course it devolves upon plaintiff to show such facts as render it valid and binding. In *Freeman v. Fulton Fire Ins. Co.*, 38 Barb. *supra*, the court said: "It must be considered as well settled at present that at common law, as well as under the statute of betting and gaming, a policy of fire insurance is void, unless the party has at the time an insurable interest. It follows that a complaint in an action on the policy, must contain an averment of such an interest, in order to state a cause of action." "The plaintiff must aver an insurable interest, or if he has not that, the grounds upon which he rests his right to sue." May on Insurance, Sec. 587. In *Ruse v. The Mutual Benefit Life Ins. Co.*, *supra*, in which the opinion was delivered by that able jurist, Judge Selden, the court said: "And it is apparent from the authorities, that it had always been previously held in suits upon policies, not containing the words, 'interest or no interest,' or other equivalent words, that the plaintiff must aver and prove that he had an interest." This was said in reference to *Depaba v. Ludlow*, (Comyn 361,) which shows how the doctrine that wagering policies upon ships are valid, originated. The defendant there had insured the plaintiff, "interest or no interest," and it was held that the import of that clause relieved plaintiff from proving his interest. That the plaintiff must, in these cases, aver and prove an interest, was held in the Supreme Court of Illinois, in *Guardian M. L. Ins. Co. v.*

*Hogan*, 80 Ill. 35, and that he must prove the same affirmatively as a part of the case.

The court below erred in refusing to give defendant's tenth instruction, and for that error the judgment must be reversed. The court did not err in excluding statements made by John T. Anderson, as to how he had been afflicted, and did properly admit statements made by him to witnesses, whether medical men or not, which were expressions of his feelings at the time. Greenlf. on Ev., Vol. 1, Sec. 101. Nor was it necessary to make such statements admissible that they should have been made in answer to inquiries as to his health, or observations of others as to his appearance, &c. But they must not have been made too long before the application to throw any light upon the condition of his health when the application was made. We think evidence properly admissible to show in what sense the term " spitting of blood," was used in the application. Without any evidence of the meaning of that term, the court might properly have instructed the jury that " spitting of blood," in consequence of a drawn tooth, or a cut on the gums, was not meant by that term, and yet if Anderson had spit blood from such trivial causes, literally his answer to the question, would have been false. There was, therefore, a propriety in the admission of evidence of the meaning of the term. There is something ambiguous in the term spitting of blood. There is room for interpretation. Literally, the meaning is spitting blood, whether from the teeth, gums or lungs, but it would be absurd to hold that it was used in that sense in the application. We have given two instances of spitting blood, which no court would hold as embraced within the terms " spitting of blood," as used in that application. Hence, the necessity for an explanation; " spitting of blood," is, and was proved to be a technical term. Other errors are assigned, but it is unnecessary to consider them. We are all agreed that the judgment should be and it is accordingly reversed, and the cause remanded.    REVERSED.