McRAE v. WARMACK.

Opinion delivered February 27, 1911.

1. LIFE INSURANCE—WHEN A WAGERING CONTRACT.—The issuance of a policy of life insurance to one who has no insurable interest in the life of the insured, but who pays the premiums for the chance of collecting the policy, is invalid, as the contract is a wager and against public policy. (Page 56.)

2. SAME—WHEN ASSIGNMENT OF POLICY ILLEGAL.—The assignment of a policy of insurance to one having no insurable interest in the life of the insured, though issued to one having such interest, is invalid

if made in pursuance of an agreement made at the time of the issuance of the policy.  (Page 57.)

3.  SAME—·INSURABLE INTEREST.—The relationship of uncle and nephew is not in itself sufficient to give to the one an insurable interest in the life of the other where there is no reasonable ground of expectation of support to be furnished by the assured to the other. (Page 57.)

4.  SAME—ASSIGNMENT OF POLICY—EFFECT.—Where, under agreement made at the time of its issuance, a policy of life insurance was assigned absolutely to a creditor of the insured who had no other insurable interest in the insured's life, the assignee is entitled to recover merely the amount of his debt and the premiums which he paid on account of the contract.  (Page 60.)

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; reversed.

*Thomas C. McRae, W. V. Tompkins* and *D. L. McRae,* for appellant.

1.  An uncle has no insurable interest in the life of a nephew.  116 S. W. (Mo.) 1; 25 Cyc. 705.  A verbal contract entered into between an uncle and nephew that the latter should apply for a policy of life insurance, and upon the issuance thereof assign the same to the uncle, which contract was afterwards, on delivery of the policy, reduced to writing and signed by the parties, is invalid; and the assignment of the policy is void.  3 L. R. A. (N. S.) 934; *Id.* 946; 158 N. Y. 24; 44 L. R. A. 417; 15 Wall. 643; 104 U. S. 775; 122 Ky. 402, s. c. 21 Am. & Eng. Ann. Cas. 685; 97 Va. 74, s. c. 45 L. R. A. 245; 104 U. S. 779; 77 Ark. 60; 84 S. W. 1164; 112 Pa. 446; 18 L. R. A. (N. S.) 114; 131 Fed. 728, s. c. 65 C. C. A. 589; 125 Ga. 206; 122 Ky. 402.

2.  Where a policy is valid in its inception, and the policy is pledged to the assignment for the payment of a debt, the assignee might recover; but this suit is not for that purpose, and it would have availed appellee nothing to have made such claim because he could not establish a right to the amount of his debt except by showing his illegal and void contract.  47 Ark. 378.

*Hamby & Haynie,* for appellee.

As to whether a contract in any given case is a wagering contract depends upon the facts and circumstances of that particular case, and the decision usually turns upon the good or bad

faith of the parties making the contract. The facts in this case present every element of good faith. It presents a case of one man, without means to pay premiums, who desired insurance on his life for the protection of his family, and his uncle, friend, creditor and business associate, who agreed to assist him in procuring the insurance by paying the first two annual premiums on two policies, one of which was assigned to him, doubtless for his own protection while carrying the policy for the benefit of the nephew's family. The transaction was legitimate. 138 Mass. 24; 67 Wis. 75; 58 Am. Rep. 848; 11 R. I. 439; 23 Am. Rep. 496; 94 U. S. 457; 25 L. R. A. 630; 69 U. S. 735; 95 Ark. 529.

Frauenthal, J. This was an action instituted by L. M. Warmack, the plaintiff below, to recover the proceeds of the collection of an insurance policy issued on the life of Dozier L. Boswell, by reason of an alleged assignment thereof by said Boswell to him. Upon the death of said Boswell the company issuing the policy agreed to make payment thereof, but, the administrator of said Boswell and the plaintiff both claiming to be entitled to the payment, the company threatened to institute an action of interpleader, whereupon the parties agreed that payment of the policy might be made by it to the administrator without affecting any right that plaintiff might have thereto. The plaintiff then presented to the administrator his duly verified claim against the estate for $2,500, the amount of said policy, and instituted this suit for the recovery thereof against said administrator, The sole defenses made by the administrator against a recovery by plaintiff were, (1) that the assignment of the policy by Boswell to plaintiff was invalid because it was in the nature of wagering contract, and (2) that plaintiff had surrendered to Boswell prior to his death the policy and all his interest therein. Upon the trial of the case the court held that the assignment of the policy to plaintiff was not in the nature of a wagering contract but was valid, and submitted to the jury the sole question as to whether or not plaintiff had surrendered the policy and his interest therein to Boswell prior to his death. The jury answered said question in the negative, and thereupon the court rendered judgment in favor of plaintiff for the full amount of $2,500.

The testimony relative to the issuance and assignment of the policy is practically undisputed, and presents the following case:

In May, 1907, D. L. Boswell and plaintiff entered into a verbal contract whereby it was agreed that said Boswell should apply to the insurance company for two policies of $2,500 each upon his life, and that plaintiff should pay the two first premiums thereon and take an assignment of the policies with an understanding that one of the policies should be payable to plaintiff and the other to the estate of Boswell upon his death. In pursuance of the agreement application for the policies was made, and upon the receipt thereof the verbal agreement was reduced to writing and is as follows

"Bodcaw, Ark., July 2, 1907.

"This writing witnesses that Dozier L. Boswell, who has this day accepted from the State Mutual Life Insurance Company, of Rome, Ga., two policies of insurance, Nos 18811 and 18812, of $2,500 each on his life for his estate, does hereby assign unto Lawrence M. Warmack the above named and numbered policies. It also is agreed that Lawrence M. Warmack shall pay the first and second premiums on the above named and numbered policies. It is further agreed that Dozier L. Boswell may release from this assignment policy Number 18811 after two years by assuming the payments of the annual premiums on both of the above named and numbered policies. It is also agreed that, should Dozier L. Boswell fail to pay the third or any subsequent annual premium, policy No. 18811 reverts back to Lawrence M. Warmack. It is also agreed that, should the death of Dozier L. Boswell occur during the first two years after that time while the policies are being sustained by the insured, then $2,500 of the insurance or policy No. 18811 will be payable to the estate of the insured only.

(Signed)    "D. L. Boswell,

"L. M. Warmack."

The policies were on the receipt thereof turned over by Boswell to plaintiff under the above written contract, and plaintiff paid the first two premiums on both policies, amounting to $262. Before the third premiums matured Boswell died. Shortly before his death the plaintiff turned over the policies to Boswell in order, as he claimed, that Boswell might show them to his wife, and they remained in his possession until his death. It appears that plaintiff was the uncle of Boswell, but in no way dependent upon him; and upon the trial of the issue as to whether or not he had

surrendered the policies to Boswell there was some testimony indicating that Boswell was indebted to him, but the testimony as to the nature and extent of the indebtedness was not fully developed; it was only introduced for the purpose of showing whether or not the plaintiff had surrendered the policies and released all his interest therein ' when he turned same over to Boswell.

It is urged by counsel for defendant that plaintiff had no insurable interest in the life of Boswell, and that the contract for the assignment of the policies to him was a mere wager by which he was directly interested, not in his life, but in his early death, and on this account such assignment was against public policy and invalid. The principle upon which life insurance is based is that one who has a reasonable expectation of benefits and advantages growing out of the continuance of the life of the assured has such an interest in his life that he may insure the same. But where one is not thus interested in the life of the assured, but by insuring such life is rather interested in his early death, the contract of insurance is a mere wager, and against a sound public policy. Such contracts, it has been thought, would, if upheld, result in a mere traffic in human life, and would lend a great incentive to one thus disinterested in the life but interested in the death of the assured to shorten that life. It is therefore well settled that the issue of a policy to one who has no insurable interest in the life of the insured but who pays the premiums for the chance of collecting the policy is invalid because it is a wagering contract and against a sound public policy. *Cammack* v. *Lewis,* 15 Wall. 643; *Connecticut Mut. L. Ins. Co.* v. *Schaefer,* 94 U. S. 457; *Warnock* v. *Davis,* 104 U. S. 775; *Gilbert* v. *Moose,* 104 Pa. 74; *Corson's Appeal,* 113 Pa. St. 438; *Deal* v. *Hainley,* 116 S. W. 1; *Bromley* v. *Washington L. Ins. Co.,* 122 Ky. 402; *Gordon* v. *Ware Nat. Bank,* 65 C. C. A. 580; *Metropolitan Life Ins. Co.* v. *Elison,* 72 Kan. 199, 3 L. R. A. (N. S.) 934, and note; *Ruse* v. *Mutual Benefit Life Ins. Co.,* 23 N. Y. 516; 1 Cooley's Briefs on Law of Ins. 246. And for the same reason it has been held by the great weight of authority that the assignment of a policy of insurance to one having no insurable interest in the life of the insured, though issued to one having such insurable interest, will be ineffective and invalid if such assignment was

made in pursuance of an agreement made at the time of the issuance of the policy. *Connecticut Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457; *Warnock* v. *Davis, supra; Gordon* v. *Ware Nat. Bank, supra.* See also cases cited in 1 Cooley's Briefs on Law of Insurance, 273.

In the case of *Warnock* v. *Davis,* 104 U. S. 775, it is said: "The assignment of a policy to a party not having an insurable interest is as objectionable as the taking out of a policy in his name. * * * If there be any sound reason for holding a policy invalid when taken out by a party who has no interest in the life of the assured, it is difficult to see why that reason is not as cogent and operative against a party taking an assignment of a policy upon the life of a person in which he has no interest. The same ground which invalidates the one should invalidate the other."

There are a great many authorities which hold that a policy which is valid at its inception is assignable like any other chose in action, and one should be permitted to dispose of a valid policy of insurance effected in good faith upon his own life. See cases cited in *Gordon* v. *Ware Nat. Bank,* 65 C. C. A. 580 at page 583; and in 1 Cooley's Brief on Law of Insurance, 273. But even by these authorities it has been held that an assignment made in pursuance of an agreement to that effect at the time of the issuance of the policy to one who has no insurable interest in the insured and who agrees to pay the premiums is tainted with a wagering element and is invalid.

It is not necessary for the purposes of this case to discuss or determine the various relations and circumstances which will be sufficient to constitute an insurable interest in the life of another. It has been uniformly held that the relationship of uncle and nephew is not in itself sufficient to constitute such insurable interest where there is no reasonable ground of expectation of support to be furnished by the assured to the other. 2 Joyce on Ins. § 1069; *Corson's Appeal,* 113 Pa. St. 438; 25 Cyc. 705; *Singleton* v. *St. Louis Mutual Ins. Co.,* 66 Mo. 63; *Metropolitan L. Ins. Co.* v. *Elison, supra.*

It is not claimed by plaintiff that he had any expectation of support being furnished him by Boswell, or that he was in any way dependent on him, nor can such a claim be gathered from the

contract under which the assignment was made. The right to
the policy and the validity of the assignment thereof must be
determined by the contract under which it was made. The object
and purpose of the assignment and the consideration therefor are
plainly set forth in this contract. According to that agreement
the assignment was not made in consideration of any debt that
Boswell owed to the plaintiff, nor for the purpose of insuring any
interest that plaintiff had as a creditor in his life, nor to insure
the benefit that he would receive from any support from him. As
alleged in the complaint, the sole reason why this assignment was
made was that Boswell concluded to have his life insured, but
was unable to pay the premiums therefor, and, in order to get the
plaintiff to pay the premiums on both policies, he agreed that
plaintiff should receive the proceeds of one of the policies upon
his death.

It is urged that Boswell effected these policies himself upon
his own life, in which he had an insurable interest, and that the
policies were therefore valid at their issuance; and, being valid
at their inception, it is insisted by counsel for plaintiff that a valid
assignment of the policies could be made to one, although he had
no insurable interest in the life of the insured. But, according
to this contract, at the very inception of the purpose to apply for
the policies and at and before the issuance thereof it was agreed
that this assignment should be made to plaintiff. The policies,
it is true, were issued in the name of and to the assured, who had
an insurable interest in his own life, but immediately upon their
issuance they were assigned pursuant to this previous agreement
to the plaintiff, who had no insurable interest in the life of the
insured. As has been seen above, such an assignment is as in-
effective and invalid as if the policies had been made payable to
plaintiff at their execution. Nor do the terms of the agreement,
providing that one of the policies should go to Boswell's estate
and the other only to plaintiff in consideration of the payment by
plaintiff of the premiums on both policies, make this assignment
any the less a wagering contract. *West* v. *Sanders,* 104 Ga. 727.
As before stated, the theory upon which a contract of life
insurance is based is that the person to whom the policy
is payable is interested in the continuance of the life of the in-
sured, whether such policy is made payable to him at its issuance

or becomes payable to him by assignment thereof. He must be so related to the assured that the continuance of the life of the assured will be an advantage to him. And it is this interest resulting from that benefit or advantage which he would lose by the death of the insured that he is permitted to insure. Because the estate of the insured would receive the proceeds of one of these policies upon the death of Boswell did not make the plaintiff interested in the continuance of his life; nor did it make such an assignment valid because the assured received some consideration therefor. The plaintiff was no more interested in the continuance of the life of Boswell, whether the assignment was made with or without price. His insurable interest in the life of Boswell could only be grounded upon his relation to him, pecuniary or of near kin, none of which he possessed. Without such insurable interest in Boswell's life, the plaintiff by the above contract simply agreed to pay the premiums of the policies upon the chance of making a profit upon the money thus invested. That profit would more quickly come to him by the early death of Boswell. By this contract he stood to make $2,500 upon the payment of two premiums if Boswell did not outlive him. The contract for the assignment of these policies was in the nature of a mere wager, under the terms of which the plaintiff was directly interested in the early death of Boswell, rather than in the continuance of his life. The assignment was therefore contrary to public policy, and was invalid.

But the contract for the assignment of the policies was not designed for the purpose of perpetrating a fraud upon any one, and its execution did not involve any moral turpitude, and the assignment made in pursuance thereof was not void for any of these reasons. The reason for holding the assignment invalid is that such a transaction is not only in the nature of a gaming contract, but that it is against public policy, because it creates an interest in the early death of the insured on the part of the assignee who has no corresponding interest in his life. The speculative or gaming feature of the contract of assignment consists in the assignee obtaining the full payment of the policy solely on the advancement of the premiums and with no further interest therein. If therefore this speculative feature of the transaction is eliminated, the reason for declaring such assignment invalid

would cease. To the extent that the assured was actually indebted to the assignee, and to the extent that he advanced the premiums on the policies, the assignee had an actual interest therein; above such sums only was the contract of assignment speculative. It was lawful for the plaintiff to advance the premiums on the policies as they became due to the company, and it was lawful for the assured to assign to plaintiff the policies as security for the payment of those advances and all indebtedness due by him to the plaintiff. By the reimbursement of plaintiff for these sums only any feature of the contract of assignment which otherwise might be of a wagering nature or against public policy would be eliminated. The plaintiff would thereby receive only the debt that was actually due to him, and would not receive any profit based upon a wager on human life. In the case of *Warnock* v. *Davis, supra,* the court, in speaking of an assignment of a policy made to one who had no insurable interest in the life of the insured but who paid the premiums thereon, said: "Although the agreement between the Trust Association and the assured was invalid as far as it provided for an absolute transfer of nine-tenths of the proceeds of the policy upon the conditions named, it was not of that fraudulent kind with respect to which the courts regard parties as alike culpable and refuse to interfere with the results of their action. No fraud or deception upon any one was designed by the agreement, nor did its execution involve moral turpitude. It is one which must be treated as creating no legal right to the proceeds of the policy beyond the sums advanced upon its security. * * * The assignment was only invalid as a transfer of the proceeds of the policy beyond what was required to refund those sums."

In the case of *First Nat. Bank* v. *Terry,* 99 Va. 194, it was held that an assignment of a life policy to a creditor who pays subsequent premiums entitled the assignee to the amount of his debt and the premiums paid, even if the assignment was absolute; and that to limit the recovery of the assignee to these sums would prevent any speculation in insurance on human life. *Helmetag* v. *Miller,* 76 Ala. 183; *Culver* v. *Guyer,* 129 Ala. 602; *Beard* v. *Sharp,* 100 Ky. 606; *Cawthon* v. *Perry,* 76 Tex. 383; *Tate* v. *Com. Bldg. Assn.,* 45 L. R. A. 243.

In the case at bar we think that the above contract for the

assignment of the policies was invalid in so far as it made an absolute transfer of the proceeds of the insurance policies, because to that extent it was a wagering contract; but we also think that the plaintiff is entitled to recover the amount which the assured actually owed to him and the premiums which he paid on account of the contract.

The court therefore erred in holding that the contract for the assignment of the policy of insurance to plaintiff was valid, and that thereby the plaintiff was entitled to recover the entire proceeds thereof. He is only entitled to recover of the estate the amount which Boswell actually owed to him and the premiums advanced by him.

The judgment is accordingly reversed, and the cause remanded for a new trial.