### PIONEER NURSING AND REHAB CENTER, INC., Plaintiff,

v.

### UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.

### No. 499CV626HW.

United States District Court,
E.D. Arkansas,
Western Division.

Feb. 28, 2001.

---

Charles A. Banks, Armstrong Allen, PLLC, E. B. Chiles, IV, Quattlebaum, Grooms, Tull & Burrow PLLC, Little Rock, AR, for Plaintiffs.

Bryon L. Freeland, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., Little Rock, AR, for Defendant.

## ORDER

HENRY WOODS, District Judge.

The parties have filed cross motions for summary judgment in this case. It is clear that the material facts are not in dispute.

Plaintiff Pioneer Nursing and Rehab Center, Inc. ("Pioneer") is an Arkansas corporation which owns long-term care facilities in the State of Arkansas. In September, 1995, Pioneer contracted with Linco Construction Company, Inc. ("Linco") for Linco to serve as general contractor on a long-term care facility in Melbourne (Izard County), Arkansas. John L. Rauch was president of Linco at the time the parties entered into the contract. Linco was a relatively small contractor, and John Rauch was its sole stockholder and chief operating officer. The project was financed with a loan from the United States Department of Housing and Urban Development ("HUD").

After work had begun on the facility, Pioneer learned that Linco had fallen be-

hind schedule on the project and had failed to pay some of its subcontractors in a timely manner. Jim Cooper, a principal of Pioneer, contacted Ross Honea, an insurance agent, about obtaining a so-called "key man" insurance policy on Rauch's life.

There is some dispute about exactly what happened with the applications for a term life insurance policy on Rauch's life. Defendant contends that the first application was rejected, in part, because Pioneer did not have an insurable interest on Rauch's life. It is undisputed that Rauch's health was a factor.

The second application, also handled by Honea, was accepted by the defendant, and defendant issued the life insurance policy on July 28, 1996. Under the terms of the policy, Linco owned the $500,000 [1] policy on the life of John Rauch, and Rauch's estate was the designated beneficiary. The policy was to run for a period of five years. On August 2, 1996, Linco irrevocably assigned all its interests in the policy to Pioneer. The assignment was received and recorded by the defendant on September 12, 1996. There is nothing in the record to indicate that the defendant ever questioned or voiced any objection to the assignment.

The Melbourne facility was eventually finished, but Linco failed to pay its subcontrators in full. Pioneer assumed that obligation, and paid the costs of completing the building project, which amounted to about $200,000. Meanwhile, Pioneer sued Linco in Pulaski Circuit Court to recover these funds, and Pioneer continued to pay premiums on the policy insuring Rauch's life. On June 26, 1998, John Rauch died of injuries sustained when a letter-bomb exploded in his face. The person (or persons) responsible for killing John Rauch has not yet been identified.

It is undisputed that the plaintiff has supplied the defendant with all appropriate claims forms. The defendant has investigated the events surrounding the issuance of the policy. This investigation included an inquiry into Rauch's health history, the reason for taking out the policy, and the cause of death. The defendant's file reveals the following summary, after its investigation:

This is a claim where insured was killed by a letter bomb. The original application was for 750,000 with beneficiary Pioneer Nursing and Re Hab. Eric Coates, the underwriter, questioned the need as inspection indicated policy was like a performance bond in that it was to protect the Nursing home if Mr. Rauch died, the home could still be built (sic). We do not write short term coverage where the policy will usually lapse when the building is completed. The agent then asked us to make his estate the beneficiary and the Lynco (sic) Construction the owner. After the policy was issued the agent sent in change of beneficiary and ownership forms (9/4/96). It would appear this was his intention all along, i.e. to get a policy for a short term need. I think an investigator needs to interview him and delve into what the policy was intended to do, why he changed beneficiary to get policy issued and changed it back. Also why policy was kept long after the building was completed and no longer any reason to maintain policy which he knew was being kept since 2 lapse notices were sent out 9/30/97 and 12/30/97. *I don't see anything in the file that would have changed original underwriting decision* but it would appear the financial information given to us on inspection report

---

1. The policy was originally issued in the amount of $750,000, but was reduced by

agreement of the parties.

was over-exaggerated. If we eventually pay claim then we should pay it to the court until investigation complete and beneficiary involvement ruled out. I think agent needs to be brought into this investigation.

Memo from George Diaz, Manager, Underwriting Department, United of Omaha (Emphasis added). This memorandum to the file indicates dissatisfaction with the agent, and even goes so far as to suggest that the agent be brought into the investigation. Yet, as the emphasized phrase indicates, nothing in the defendant's investigation of the event surrounding the issuance of the policy revealed any information which would have changed the decision to issue the policy.

The defendant contends that the insurance contract at issue in this case was illegal from its inception, because Pioneer did not have an insurable interest in Rauch's life, under relevant Arkansas law. For purposes of deciding the motions for summary judgment, the Court will assume that it was the parties' intent, at the time the insurance application was made, that the policy would be assigned to Pioneer to insure against Rauch's death before the nursing home project was completed.

Defendant correctly states that Arkansas law prohibits wagering contracts. In *McRae v. Warmack*, 98 Ark. 52, 135 S.W. 807 (1911), the Arkansas Supreme Court held that only, "one who has a reasonable expectation of benefits and advantages growing out of the continuance of the life of the assured has such an interest in his life that he may insure the same." *McRae*, 98 Ark. at 58, 135 S.W. at 809.

"Insurable interest," in the case of personal insurance is defined by statute in Arkansas, and includes four categories. First, persons closely related to an insured by blood or law have a substantial interest "engendered by love and affection." Second, in the case of those not related by blood or law, persons with "a lawful and substantial economic interest in having the life, health, or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement, or injury of the individual insured" have an insurable interest. Third, a party to a contract for the purchase or sale of an interest in a business partnership or firm, or of shares of stock of a closed corporation, has an insurable interest in the life of each individual party to the contract; and fourth, a publicly owned corporation has an insurable interest in the lives of its director, officers, and employees. A.C.A. § 23–79–103(c)(1)(A), (B), (C), and (D).

In the case at bar, it is clear that Pioneer had an insurable interest in the life of John Rauch as that term is defined and interpreted under Arkansas law. Pioneer had a "lawful and substantial economic interest in having the life ... of [Rauch] continue" so that he could complete the nursing home construction project. Rauch was, in effect, Linco Construction. He was the sole shareholder. He was the chief operating officer. Without Rauch, there was no Linco Construction.

It is undisputed that Rauch, on behalf of Linco, had drawn heavily on the HUD loan, that he had fallen behind in the construction schedule at the time the insurance contract was made, and that subcontractors were not being timely paid. I find, as a matter of law, that Pioneer had an insurable interest in the life of John Rauch as the sole shareholder and chief operating officer of Linco Construction.

Furthermore, Pioneer had a continued interest in Rauch's life even after the construction project was finished. As noted above, Rauch left the job unfinished, causing Pioneer to expend $200,000 to com-

plete the project. Pioneer sued Linco, and while the litigation to recover the $200,000 was pending, Pioneer had a substantial economic interest in Rauch's ability to keep Linco Construction in operation so that it could pay any judgment Pioneer might secure against it.

Accordingly, the plaintiff's motion for summary judgment is granted. The defendant's motion for summary judgment is denied, this 28th day of February, 2001.