WILLIAM J. MOORE *et al.*

*v.*

THE CHICAGO GUARANTY FUND LIFE SOCIETY *et al.*

*Opinion filed February 17, 1899.*

1. BENEFIT SOCIETIES—*act of 1893 does not have retrospective effect.* The act of 1893, relating to benefit societies, (Laws of 1893, p. 130,) does not apply to certificates issued by a society prior to its re-organization under that act, nor will its provisions govern the assignment of such certificate in the absence of anything to show the assignment was made after such re-organization.

2. SAME—*under act of 1883 assignee of certificate need not have an insurable interest in member's life.* The assignee of a benefit certificate issued by a benefit society organized under the act of 1883, relating to assessment companies, (Laws of 1883, p. 105,) need not have an insurable interest in the member's life in order that the assignment may be held to be valid.

3. SAME—*member of society organized under act of 1883 may change beneficiary by assignment.* Section 1 of the act of 1883, providing for benefit societies to furnish life indemnity or pecuniary benefits to "devisees and legatees" of deceased members, does not prohibit a holder of a benefit certificate payable to his estate from changing the beneficiary by assigning the certificate, in the absence of any objection by the society.

4. SAME—*society cannot curtail member's right to change beneficiary on approving assignment.* A benefit society organized under the act of

1883 cannot curtail the right of a member holding a certificate payable to his estate to change his beneficiary by assignment, by inserting conditions in its approval of the assignment.

5. SAME—*construction of provision of certificate concerning proof of interest by assignee.*  A condition in a benefit certificate providing that "claim made by the assignee shall be subject to proof of interest, and the amount recoverable thereunder by such assignee shall be limited to the value of the interest proven," applies only to an assignment made to secure debts, and not to change the beneficiary.

6. SAME—*when assignee may recover as against the heirs of a deceased member.*  As between the heirs of a member of a benefit society organized under the act of 1883, whose certificate was payable to his estate, and the assignee of such certificate under an assignment made for the purpose of making the assignee the beneficiary, the latter is entitled to recover the amount due under the certificate although she had no insurable interest in the member's life.

*Moore* v. *Chicago Guaranty Fund Life Soc.* 76 Ill. App. 433, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

BEACH & BEACH, for appellants.

WALTER OLDS, and CHAS. F. GRIFFIN, for appellees.

Per CURIAM: After a careful examination of the record in this case, and the briefs and arguments of counsel, we are satisfied the judgment of the Appellate Court is correct, and it will be affirmed.  All questions involved have been fully considered in the opinion of the Appellate Court, and that opinion will be adopted as the opinion of this court.   It is as follows:

"ADAMS, P. J.:   The Chicago Guaranty Fund Life Society, a corporation organized under an act of the legislature of this State in force July 1, 1883, entitled 'An act to provide for the organization and management of corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the widows, orphans, heirs, relatives and devisees of deceased

members,' etc., (Hurd's Stat.1885, p.732,) and re-organized under an act entitled 'An act to provide for the organization and management of fraternal beneficial societies,' etc., approved and in force June 22, 1893, (2 Starr & Curtis' Stat. 1896, p. 2278,) issued to James E. Moore, December 17, 1892, a certificate or policy of insurance insuring him in the sum of $5000, the said sum to be paid to his estate in the event of his death and satisfactory proof thereof.  December 24, 1892, James E. Moore assigned the certificate to the appellee Minnie Zollinger.  The Guaranty Fund Life Society endorsed on the instrument of assignment the following:

"'The Chicago Guaranty Fund Life Society hereby consents to the above assignment, subject to the following conditions: That a legal insurable interest must be shown by all claimants at time of claim hereunder, and claims made by any creditor or assignee shall not exceed the amount of the actual *bona fide* indebtedness of the member to him, together with any payments made to the society under the certificate of policy of said creditor, with interest at six per cent.

Chicago,.........., 18..'  CHAS. I. WESTERFIELD, *Secretary.*

"The charter of the society contains the following: 'The object for which this corporation is formed is to furnish life indemnity or pecuniary benefits to widows, orphans, heirs or relatives by consanguinity or affinity, and devisees or legatees of deceased members, and to raise funds for the payment of such benefits, in whole or in part, by assessments on the surviving members.'

"November 21, 1895, James E. Moore died, and the company received satisfactory proofs of his death.  It appears from the evidence that, deducting from the amount of the sum insured certain sums due the company, there was due on the policy $4214.30.  This amount was claimed by the appellants, William J. Moore and Cornelia Moore, as executor and executrix of James E. Moore, deceased, and by Minnie Zollinger as assignee of the policy, and March 15, 1897, the society filed a bill of interpleader, making ap-

pellants and Minnie Zollinger defendants, praying, among
other things, that they should set forth their claims, re-
spectively, and offering to pay the amount due on the
certificate to whomsoever the court should decree was
entitled to the same, etc.   The defendants answered the
bill.   Issues were made up, and the cause referred to a
master to take proofs and report the same, with his opin-
ion as to the law and the evidence.  The master reported
that at the time of the assignment of the certificate to
Minnie Zollinger, James E. Moore was not indebted to
her, and that she had not at that time any insurable in-
terest in his life, but that in his opinion it was not nec-
essary to the validity of the assignment that she should
have had such insurable interest; that the assignment
was valid and effectual, and that she was entitled to the
insurance money as against appellants, and he so recom-
mended.   Exceptions were filed by appellants to the
master's .report, which the court overruled, affirmed the
report and rendered a decree as recommended by the
master.

"The mainly contested question of fact between ap-
pellants and appellee Zollinger was as to whether James
E. Moore, at the time of the assignment of the certificate,
was or not indebted to appellee Zollinger.   We will not
discuss the evidence on that question for reasons which
will hereinafter appear.

"Appellants' counsel, in their argument, advance the
following propositions:   'As there was no consideration
for the alleged assignment of the policy or certificate,
and no indebtedness existing on the part of James E.
Moore, deceased, to the defendant Minnie Zollinger, and
the defendant Minnie Zollinger had no insurable interest
in the life of the deceased, James E. Moore, the alleged
assignment was invalid, null and void, for the reason
that the defendant Minnie Zollinger is not one of the
persons named by the statute under which the complain-
ant company was organized, nor in the articles of incor-

poration of the said society, for whose benefit the funds of said society were to be raised.' These propositions involve two questions, viz.: Was it necessary to the validity of the assignment that Minnie Zollinger should have had, at the time of the assignment, an insurable interest in the life of James E. Moore? Was the assignment to Minnie Zollinger in violation of the law under which the society was organized?

"Appellants' counsel, in support of the proposition that the assignment was in violation of the statute, cite and rely both on section 1 of the act of 1883 and section 1 of the act of 1893,—this, doubtless, for the reason that it is admitted by the pleadings that the society was organized under the former and re-organized under the latter act. But we deem the latter act inapplicable to the certificate in question. The certificate was issued, as before stated, December 17, 1892, and as the act of 1893 did not take effect until June 22, 1893, the society could not have re-organized under the latter act until after that date. It does not appear, either by the pleadings or the evidence, when the society re-organized under the act of 1893, and *non constat* but that such re-organization was subsequent to the assignment in question.

"In *Voigt* v. *Kersten*, 164 Ill. 314, a certificate was issued January 14, 1893, by the High Court of the Independent Order of Foresters to one Paul Anton Fischer, who subsequently, and about October 19, 1894, applied to the society for permission to substitute Anna Rosina Kersten for Fischer as the beneficiary in the certificate, which permission was refused. Fischer died October 30, 1894, and Voigt and Anna Rosina Kersten both claiming the insurance money, the society filed a bill of interpleader making them defendants. The society was originally organized under an act in force July 1, 1887, and under that act and the by-laws of the society either Voigt or Kersten might have been a beneficiary. After the issuance of the certificate and after the act of 1893 was passed

the society adopted the provision of the latter act under which neither Voigt nor Kersten could be a beneficiary, neither of them being of the description of persons described in that act and to whom death benefits were limited by the act.   The court held that the act of 1893 was not intended to have a retrospective effect and did not affect certificates issued prior to its passage, saying: 'At the time the contract was made between the deceased and the complainant order, this right to appoint the beneficiary or change the name existed, and, we think, was an important part of the contract entered into.   It would seem that the construction of the act passed in June, 1893, giving it the effect to destroy that right of appointing a beneficiary or naming another beneficiary which existed in favor of the deceased under his contract prior to the passage of the act, would be to give the act a retrospective effect and destroy the obligation of the contract entered into between the deceased and the complainant,' etc.   This eliminates from consideration the act of 1893.

"Section 1 of the act of 1883 is as follows:  'That corporations, associations or societies for the purpose of furnishing life indemnity or pecuniary benefits to the widows, orphans, heirs or relatives by consanguinity or affinity, devisees or legatees of deceased members, or accident or permanent disability indemnity to. members thereof, and where members shall receive no money as profit, and where the funds for the payment of such benefits shall be secured, in whole or in part, by assessment upon the surviving members, may be organized subject to the conditions hereinafter provided.'   (1 Starr & Cur. Stat. 1885, chap. 73, par. 122, p. 1348; Hurd's Stat. 1885, chap. 73, par. 125, p. 732.)

"It will be perceived that devisees or legatees are among the classes named who may be beneficiaries.  This section has been construed by the Supreme Court in several cases.   In *Bloomington Mutual Benefit Ass. v. Blue,* 120

Ill. 121, the contest was between Blue, the beneficiary named in the certificate, and the benefit association.   It appears from the brief filed for the benefit association that its counsel urged as grounds for the reversal of the judgment that the contract was void for the reason that Blue had no insurable interest in the life of the assured, and that he could not be a beneficiary, he not being within any class named in the statute.   (Ibid. 122.)   The court held, citing a number of cases, that it was not necessary that Blue should have had an insurable interest in the life of Bailey, the insured; that Bailey had an insurable interest in his own life, and had a right to procure a policy on his life, and also, unless some principle of public policy was violated, to make it payable, in case of his death, to any person whom he might desire.   The court also held that it was not contrary to public policy for Bailey, the assured, to make the policy in question payable to Blue, saying:   'The first section of the act under which the defendant is organized, in express terms authorizes the organization of such associations for the purpose of furnishing life indemnity or pecuniary benefits to devisees or legatees.   If, as is plain from the language of the statute, a person may take out a policy on his own life and devise such policy to a stranger, what principle of public policy would be violated by a provision in the policy making it payable to a stranger, in lieu of doing the same thing by will?   If the policy may be made payable to a stranger who has no insurable interest in the life of the insured, as it may be by statute, we perceive no reason which will prevent the same thing being done by a clause the insured may have inserted in the policy at the time the insurance is procured.'   The court further held that as between Blue, the beneficiary, and the association, the latter, having received the full benefit of the contract, was estopped to claim that Blue was not within any of the classes named in the statute and that the contract was *ultra vires*, which last holding has no applica-

tion to the present case. In *Martin* v. *Stubbings*, 126 Ill. 387, however, the court went further. The contest in that case was between Mrs. Martin, the widow of the assured, who was named in the certificate as beneficiary, and Stubbings, an assignee of the certificate, they having been made parties defendant to a bill of interpleader filed by the Knights Templars and Masons' Life Indemnity Company, which company had issued a certificate to Neal K. Martin, deceased. The court say: 'The assignment of the certificate of membership to Stubbings is not within the strict letter of the statute, but in the absence of all negative words forbidding the appointment of a beneficiary in any other mode than the one prescribed, the assignment to him is not necessarily unlawful and therefore void. He was a person capable, under the statute, of becoming a beneficiary, and the absolute right of naming him as such was in Martin. His failure to adopt the mode prescribed by the statute,—that is, by executing a will making Stubbings his legatee,—was doubtless a matter of which the society could probably object, but Mrs. Martin had no rights in the certificate which could justify her in interposing an objection. She was, to all intents and purposes, a stranger to the transaction. Her rights could arise only upon the death of Martin, and then only in case he had wholly failed to make a valid and effectual appointment of another beneficiary in her place.'

"In the last case, while the court held that there was a consideration for the assignment by Martin to Stubbings, namely, an indebtedness of the former to the latter, the court also held that an insurable interest in Stubbings was not essential to the validity of the assignment. (Ibid. 406.) And this is clearly so, because by the letter of the statute any legatee may be a beneficiary, and a testator's power to name his legatees who may be beneficiaries is not limited by the statute.

"*Palmer* v. *Welch*, 132 Ill. 141, and *Alexander* v. *Parker*, 144 id. 355, relied on by appellants' counsel, are not in the

least inconsistent with the prior cases cited, nor is either of them in point. In both cases the society which issued the benefit certificate was organized under and by virtue of a statute of the State of Massachusetts, and the court, in determining the rights of the parties, applied the Massachusetts statute as construed by the Supreme Court of that State.

"Appellants' counsel also rely on a condition annexed to the certificate and the conditional approval of the assignment heretofore quoted. The condition is as follows: 'No assignment of this policy shall be valid unless approved in writing by the secretary and a duplicate copy filed at the home office. Claim made by the assignee shall be subject to proof of interest, and the amount recoverable thereunder by such assignee shall be limited to the value of the interest proven. The society shall not be responsible for the validity of any assignment.'

"On the hypothesis that this is a part of the contract, the question is, to what character of an assignment does it refer? Does it refer to an assignment made for the purpose of changing the beneficiary? The language 'claim made by the assignee shall be subject to proof of interest, and the amount recoverable thereunder by such assignee shall be limited to the value of the interest proven,' clearly shows that the character of the assignment contemplated and intended by the parties was an assignment by the assured to a creditor to secure the claim of the latter, and that an assignment for the purpose of changing the beneficiary was not contemplated or intended by condition 20. This view is strengthened by condition 19, which is as follows: 'The insured may, with the approval of the secretary, upon surrendering this policy, change the beneficiary hereunder to any person having a legal insurable interest in the life of the insured, in which event the within named beneficiary shall have no claim whatsoever on the society.' The assignment is absolute, and does not purport to be as

security.   Condition 19 is not, in terms, prohibitory of a change of the beneficiary in another mode than that mentioned in it, nor of the naming a beneficiary who has no legal insurable interest in the life of the assured; and the Supreme Court having held that a person having no insurable interest may be made a beneficiary, and that within the spirit of the statute this may be done by assignment of the certificate, and that the society only could object to the mode of changing the beneficiary by assignment, and the society not objecting to that mode in the present case, we are of opinion that objections to the assignment based on condition 20 are untenable.   The conditions annexed to the approval of the assignment evidently refer only to an assignment as security to a creditor.   The language is:   'That a legal insurable interest must be shown by all claimants at time of claim hereunder, and claims made by any creditor or assignee shall not exceed the amount of the actual *bona fide* indebtedness of the member to him,' etc.   These conditions of approval of the assignment are the act.of the company, are no part of the contract with the assured, and cannot have the effect of limiting the right of the assured to change the beneficiary.   The society could not, after the issuance of the certificate, curtail this right. (*Voigt* v. *Kersten*, 164 Ill. 314.)   The master found, and appellants' counsel insist, that appellee Zollinger was not a creditor of the assured and had no insurable interest in his life, which being true, neither condition 20 nor the conditions of the approval of the assignment could apply to her.

"The decree will be affirmed."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*