## Supreme Lodge, Knights of Pythias, et al., v. Thora Marie L. Reyman, et al.

### Gen. No. 12,416.

1. FRATERNAL BENEFIT SOCIETY—*who lawful beneficiary.* A subordinate lodge held, under the law existing at the time of its being named as such, a lawful beneficiary.

2. FRATERNAL BENEFIT SOCIETY—*what laws do not affect rights of beneficiary.* The power of a beneficiary to receive the proceeds of a benefit certificate, if such power existed at the time it was named as such, is not affected by acts of Congress and acts of the Illinois Legislature which do not by their express terms apply to such beneficiary.

3. FRATERNAL BENEFIT SOCIETY—*what confers vested interest in benefit certificate.* An agreement by which disbursements are made on behalf of a member with the understanding that the proceeds of such certificate should pass to the party making such disbursements, gives such party a vested interest in such proceeds, notwithstanding the certificate is not assignable at law.

Bill in equity to determine ownership of funds arising from benefit certificate. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed and remanded. Opinion filed May 8, 1906.

**Statement by the Court.** The facts in this case are embodied in a written stipulation between the parties, the substance of which, material to be considered, is as follows:

" The appellant, Supreme Lodge, Knights of Pythias, was on April 23d, 1884, a corporation duly organized in the District of Columbia, United States of America, and

existing under and by virtue of the laws of Congress of the United States of America. In 1894 said appellant was re-incorporated under a special act of Congress, which act was amended in 1900, and that it is now existing and has, since the passage of the last said acts, existed under and by virtue of said acts. That under the said act of 1894 it succeeded to all the rights and obligations of the Supreme Lodge, Knights of Pythias, which had at the time been in existence. Said act provided further that said corporation should have a constitution and power to amend the same, provided that the same did not conflict with the laws of the United States or of any state.

The said appellant is now and always has been a fraternal beneficiary society not organized or conducted for profit, but for the purpose of assisting and distributing charity among its members. That ever since the date of the first benefit certificate hereinafter mentioned, the said appellant had organized and constituted what is known as the Endowment Rank, Knights of Pythias, which said Endowment Rank is now and always has been the insurance branch of the said appellant, and has no official or other connection with the subordinate lodges of the appellant.

The said appellant, through its Grand Lodges, establishes subordinate lodges, and that the appellant, Denmark Lodge No. 112, Knights of Pythias, is one of said subordinate lodges, and was duly organized to initiate applicants into the Order of the Knights of Pythias and to confer the ranks of Page, Esquire and Knight and no others, and to make all by-laws for its government, provided the same did not conflict with the laws, rules and regulations of the Grand Lodge or the Supreme Lodge, Knights of Pythias.

On the 12th day of October, 1895, the appellant, Denmark Lodge No. 112, Knights of Pythias, was incorporated under and by virtue of the laws of the State of Illinois, and has ever since said date operated under said charter as well as under the said charter granted by the said Grand Lodge, Knights of Pythias; that said charter granted by the State of Illinois provides that 'The object for which it is

formed is for the benefit of sick brothers and their families without capital.'

On February 29, 1884, Lauritz Christian Madsen, being a member in good standing in said Denmark Lodge, made application for membership in the Endowment Rank, through section 627 of said rank, and on April 23, 1884, the appellant Supreme Lodge issued its benefit certificate No. 21,699 to said Madsen, through said section, which certificate was for $2000, payable to Anna Madsen, his sister, and was subject to the by-laws then in force or thereafter to be enacted.

On June 30, 1885, a new certificate, in lieu of the one above mentioned, was issued by the appellant Supreme Lodge, Knights of Pythias, through the said endowment section No. 627, to the said Madsen, which certificate was for $2,000, payable to his sister Anna Madsen, and was subject to the by-laws then in force or thereafter to be enacted. This certificate remained in full force till the 25th day of April, 1891, when the same was surrendered by said Madsen and a new certificate issued through said endowment section No. 627, in lieu thereof, payable at the request of said Madsen, to the appellant Denmark Lodge No. 112, Knights of Pythias, one of the subordinate lodges of the appellant, Supreme Lodge, Knights of Pythias. When said last certificate was issued the by-laws provided that a member could make his subordinate lodge his beneficiary.

None of the appellees contributed anything toward the support and maintenance of said Madsen, neither has any of the appellees ever paid anything toward keeping said Madsen in good standing in said Denmark Lodge, or in said Endowment Rank. That during most of the time aforesaid said Madsen was physically incapable to support himself, and made frequent requests upon said Denmark Lodge for financial assistance, and that said Denmark Lodge did assist said Madsen at various times by giving him money for sick benefits, and agreed to pay out of the proceeds which it, the said Denmark Lodge, might receive as beneficiary under said last mentioned benefit certificate,

such sums as the said Madsen might contract for his maintenance and support, which sums so to be paid were not to exceed the amount that it, the said Denmark Lodge, might receive as beneficiary under said benefit certificate.

On June 10, 1896, the said Madsen entered into a contract with Marius C. Sorensen, whereby said Sorensen agreed to furnish said Madsen with support and maintenance, and on the same date the said Denmark Lodge agreed to pay for same out of the funds to be received by it under said last mentioned benefit certificate.   That this contract between said Madsen and said Sorensen was cancelled by mutual agreement on December 20, 1898, and the amount due said Sorensen under said contract was agreed to be $488, which amount the said Denmark Lodge agreed to pay as aforesaid.   On the 7th day of December, 1901, the said Madsen certified to the said Denmark Lodge that he was indebted to Eskild Madsen in the sum of $420, and requested said Denmark Lodge to pay the same out of the proceeds of said benefit certificate last above mentioned. On the 18th day of December, 1901, said Lauritz Christian Madsen executed his last will and testament, and delivered same to the said Denmark Lodge, in which said will he provided that the said Denmark Lodge should make, from the proceeds to be received from said last mentioned certificate, the following payments, to wit:

1.  Pay to Marius C. Sorensen.................  $488 00
2.  Pay to Eskild Madsen.....................   420 00
3.  Pay to Denmark Lodge No. 112, K. of P., to apply on Lodge Monument at Mt. Olive...   100 00
4.  Pay to Denmark Lodge Pleasure Club.......    12 00
5.  Pay to Mrs. Julia Caroline Madsen, *nee* Erickson, of 524 Austin Ave..................   400 00
6.  Pay to Hans Peter Neilson, of 120 W. Erie St.   100 00
7.  Pay to Eliza Jensen, *nee* Kuhn, of 463 W. Chicago Ave...............................    80 00
8.  Pay to Peter Chr. B. Petersen..............   200 00
9.  Pay to Peter J. Noer......................   200 00

That said Lauritz Christian Madsen died on the 5th day

of April, 1902. On May 23, 1902, the said Supreme Lodge, Knights of Pythias, paid the benefit under the last above mentioned benefit certificate to said Denmark Lodge No. 112, Knights of Pythias, the beneficiary therein, and that there-after the said Denmark Lodge made the payments desig-nated to be made in the will aforesaid. That in making the payments aforesaid the said Denmark Lodge did not derive any profit or gain therefrom, and that the said Denmark Lodge acted in good faith therein. That the said Supreme Lodge, Knights of Pythias, in making the said payment to the said Denmark Lodge, did not derive any gain or profit therein, and acted in good faith in so doing, and, further, said Supreme Lodge had no knowledge of the existence of any of the appellees herein, and neither had said Supreme Lodge nor said Denmark Lodge any notice, at the time of making the payments, as aforesaid, that either or any of the appel-lees herein had any claim to said benefit paid under said last mentioned certificate. The appellees are the only sur-viving heirs of the said Lauritz Christian Madsen.

The appellee, Marie Thora Reyman, filed a bill in equity, which bill was afterwards amended, by which amended bill she sought to recover the $2,000 benefit under the aforesaid last mentioned benefit certificate; appellees, Claus C. T. Madsen and Hans Carl Madsen, among others, were made defendants to said amended bill of complaint; the said Claus C. T. Madsen and Hans Carl Madsen filed a cross-bill; appellant Denmark Lodge demurred to complainant's amended bill, which demurrer was sustained and the amended bill as to said defendant dismissed; appellants and the complainant answered the cross-bill, which answers were replied to by cross-complainants; appellant Supreme Lodge, Knights of Pythias, answered the amended bill of complaint, to which answer complainant replied. The evi-dence was heard, whereupon the court decreed that the ap-pellant Supreme Lodge, Knights of Pythias, pay to the complainant and cross-complainants, each, the sum of $364, from which decree this appeal is taken."

Carlos S. Hardy, for appellants.

ROBERT J. FRANK, GAIL E. DEMING, FRANK E. MAKEEL and ZACH HOFHEIMER, for appellees.

MR. PRESIDING JUSTICE SMITH delivered the opinion of the court.

The assignments of error present the questions whether Denmark Lodge No. 112, Knights of Pythias, at the time it was appointed beneficiary in the Madsen benefit certificate, was a lawful beneficiary, qualified to receive the benefit therein provided for, or not. And if it was a lawful beneficiary, what effect did the subsequently enacted by-laws of the Supreme Lodge, or the Acts of 1893 and 1895 of the Illinois Legislature, or the Act of Congress of 1894, have upon the certificate and the power and right of Denmark Lodge to receive the benefits under the certificate, at the death of Madsen?

When the benefit certificate in which the Denmark Lodge was designated as beneficiary was issued to Madsen, the by-laws of the Supreme Lodge, Knights of Pythias, expressly provided: " That an applicant may name as beneficiary his betrothed, his subordinate lodge, his Endowment Rank Section, or a Brother Knight."

It appears from the record that the Supreme Lodge, Knights of Pythias, is a secret benevolent society. Denmark Lodge No. 112, Knights of Pythias, the beneficiary named in the certificate in question, is a subordinate lodge of the Supreme Lodge, through the Grand Lodge from which it receives its charter. It is organized for the purpose of initiating applicants into the Order of the Knights of Pythias, and to confer the ranks of Page, Esquire and Knight, and assisting the sick brothers and their families. It has no connection with the Endowment Rank Section which is the insurance branch or section of the Supreme Lodge.

At the time of the appointment of the Denmark Lodge as beneficiary in the certificate, the laws of the Supreme Lodge expressly authorized such appointment. The laws of Illinois then in force did not prohibit the appointment,

so far as we are advised, but on the contrary permitted the funds of fraternal beneficiary societies to be paid to strangers or persons in no way related to or connected with the member. We are of the opinion that Denmark Lodge at the time of the issuing of the certificate in question was a lawful beneficiary, and qualified to receive the benefit on the authority of the following cases and the reasoning of the courts therein, which it is not necessary here to repeat: The Bloomington Mutual Benefit Ass'n v. Blue, 120 Ill. 121; Martin v. Stubbings, 126 id. 387; Bacon v. Brotherhood of Railroad Brakemen, 46 Minn. 303; Finch v. The Grand Grove of U. A. O. of Druids, 60 Minn. 308; Delaney v. Delaney, 175 Ill. 187.

The next question is, did the amendment of the by-laws of the Supreme Lodge made subsequently to the date of the certificate, or the Acts of the Legislature of Illinois passed in 1893 and 1895, or the Act of Congress of 1894, disqualify the Denmark Lodge to receive the benefits under the certificate on the death of Madsen?

The portion of the by-law which authorized the appointment of a subordinate lodge, Endowment Rank Section, or a brother knight as beneficiary was repealed in 1892. The by-law in force at the time of Madsen's death provided that, "each applicant for membership, and each applicant for re-admission in the Endowment Rank shall designate in his application some person or persons, related to or dependent upon him for support, as hereinafter provided, to whom the benefit shall be paid when due."

We think it is evident from the language used that the amended by-law was not intended to have any effect upon existing certificates. It was intended to apply and by its terms applies to " each applicant for membership and each applicant for re-admission in the Endowment Rank " whose application was made after the amendment went into effect, and therefore the certificate and the beneficiary therein named were in no wise affected by the amendment to the by-law.

As to the effect of the Act of June 22, 1893, Voigt v. Ker-

sten, 164 Ill. 314, is decisive. At page 320 it is said in that case: "It would seem that the construction of the Act passed in June, 1893, giving it the effect to destroy that right of appointing a beneficiary or naming another bene- ficiary, which existed in favor of the deceased under his con- tract prior to the passage of the act, would be to give the act a retrospective effect and destroy the obligation of the con- tract entered into between the deceased and the complainant. It is a recognized rule in the construction of statutes that they should be so construed as to give them a prospective operation only, and they should be allowed to operate retro- spectively only where the legislative intention to give them such operation is clear and undoubted. Benton v. Brother- hood of Railroad Brakemen, 146 Ill. 570. * * * We think that the right to make this change was one of the considerations entering into the contract at the time that the deceased obtained his certificate from the complainant, and that it was a material right, and one that could not be taken away by the legislature, and we do not think that the legislature intended, by the Act of June 1893, to affect certificates of insurance issued prior thereto." The case of Delaney v. Delaney, *supra*, is also in point. And to the same effect are Moore v. Guarantee Fund Life Society, 178 Ill. 202, and Peterson v. Gibson, 191 id. 365.

By the Act of 1895, a clause prohibiting the transfer of benefits by will or assignment to any other persons than those named in the Act of 1893 was eliminated. In our opinion it had no effect upon the certificate or beneficiary therein named. For the reasons above expressed the Act of Congress of 1894 did not disqualify Denmark Lodge as beneficiary under the certificate.

It is contended by appellees in support of the decree that the Denmark Lodge was merely the nominal beneficiary and attempted to secure the proceeds of the benefit certifi- cate and distribute the same contrary to the constitution and by-laws of the order and the statutes of the state, and that the Supreme Lodge and its Endowment Rank had legal notice thereof.

This contention is not tenable upon the facts shown by the evidence. The Denmark Lodge either paid or caused to be paid Madsen's board, lodging, medicine bills, lodge dues to several societies, and insurance assessments in accordance with agreements entered into with Madsen. This gave the Denmark Lodge such a vested interest in the certificate as a court of equity will protect and enforce, although the certificate was not assignable at law. Supreme Council Royal Arcanum v. Tracy, 169 Ill. 123; McGrew v. McGrew, 190 id. 604; Jarvis v. Binkley, 206 id. 541.

. It is insisted that Madsen by the paper dated December 18, 1901, called his last will, changed the beneficiaries in his certificate to the devisees named in the paper, in violation of the by-laws of the order, and therefore the persons named in the so-called will took nothing thereby.

This paper or document was never proved up and probated as and for Madsen's will. It was filed with Denmark Lodge simply and has remained there. Whether it amounts to a will, or what its legal effect is, cannot be material here, for it did not in any way legally change the certificate or the beneficiary under the certificate. That the Denmark Lodge followed the directions contained in the document and paid the debts of Madsen which it had obligated itself to do, did not and could not give the document the legal effect contended for by appellees. The lodge had the legal right to use the money due at the time of Madsen's death on the certificate in question for the purposes shown by the evidence; and in thus disbursing the money it was not acting as the agent of the Supreme Lodge. When that body paid the amount of the certificate to Denmark Lodge, the beneficiary therein named, it had discharged its obligation under the certificate, and it had no further duty to discharge in connection with the matter. Consequently it cannot be held accountable to complainants, appellees, in this proceeding for accounting for the money called for by the certificate. It follows that the original bill and the cross-bill do not present grounds for equitable relief.

The decree of the Circuit Court is erroneous and is reversed and the cause is remanded with directions to dismiss the bill and cross-bills.

*Reversed and remanded.*