Heard on demurrer. From the complaint it appeared:
"2. That on or about 19 October, 1904, Parrott M. Hardy, the uncle of the plaintiff, insured his life in the defendant company, and the said defendant company, in consideration of the stipulations set out in its contract of insurance, herein mentioned, did issue to the said Parrott M. *Page 276 
Hardy three certain policies on his life, in the sum of $1,000 each, each being made payable to the executors, administrators or assigns of the said Parrott M. Hardy, and the said policies being numbers 62845, 62846 and 63215, which policies are herewith deposited in court with this complaint.
"3. That on 31 October, 1904, the said Parrott M. Hardy duly (287) transferred and assigned two of the above named policies of insurance, being Nos. 62845 and 62846, to the plaintiff, which said transfers were made at the request and desire of said Parrott M. Hardy, who was assured by the defendant's agent that such assignments under the existing facts were valid and binding, and which assignments were made under the direction and with the assent and approval of the defendant company.
"4. That on 19 December, 1904, the said Parrott M. Hardy duly assigned and transferred the policy of insurance, being No. 63215, above mentioned, to the plaintiff, which said transfer was made at the request and desire of the said Parrott M. Hardy, who was assured by the defendant's agent that such assignment, under the existing facts, was valid and binding, and which assignment was made under the direction and with the assent and approval of the defendant company.
"5. That on 8 April, 1908, the said Parrott M. Hardy died, and soon thereafter proper proofs of his death were furnished to the defendant company.
"6. That at the time of the issuing of the above-mentioned policies the plaintiff knew nothing about the transactions and was in no way connected with the same, but at the said time, as well as at the time of the transfer hereinbefore mentioned, and until the death of the said Parrott M. Hardy, the plaintiff had a valuable and insurable interest in the life of the said Parrott M. Hardy, in that not only did the relationship of uncle and nephew exist between them, but also there was actually a deep affection between them, and a mutual understanding that each should call on the other in time of need or distress, all of which was actually done; and especially did the said Parrott M. Hardy look to and rely upon the plaintiff for at least twelve years immediately preceding his death, to aid and assist him in a pecuniary way, the relationship of debtor and creditor having existed between them in a large extent continuously during said time. And the said plaintiff having during said time run risk and hazard in his business, in order to be of continual assistance and help to the said Parrott M. Hardy, his uncle. That further, in the time of sickness and distress of the said Parrott M. Hardy, and especially during the last years of his life, he looked to the plaintiff for help and attention, which, owing to the relationship herein set out, was continuously administered by the plaintiff. *Page 277 
"7. That the defendant is now due the plaintiff, upon the said policies, the sum of $3,000 and interest on the same, for which demand has been duly made and payment refused by the defendant."
By leave of court, T. W. Mewborn, as administrator of Parrott M. Hardy, the insured, was allowed to interplead, and filed a (288) petition claiming the amount due on the policies. This petition admitted that the policies were taken out by Parrott M. Hardy, deceased; that they were valid at their inception, and had been assigned to plaintiff; but averred that plaintiff, as assignee, should not be allowed recovery on the policies, for the reason that the assignee, at the time of assignment made, had no insurable interest in the life of the insured.
The company demurred to the complaint, and later also to the petition, on the ground that at the time of the alleged assignment the plaintiff had no insurable interest in the life of the insured; the relationship between them being only that of uncle and nephew, and the additional facts set forth in item 6 of the complaint not creating such insurable interest; that the attempted assignment, therefore, had the effect of avoiding the policyin toto, and that no recovery thereon could be had in favor of either the plaintiff or petitioner.
There was judgment overruling the demurrer, and the company excepted and appealed.
It is very generally held that the relationship of uncle and nephew does not of itself create an insurable interest in favor of either. Corson, exr.of McLean, 113 Pa. St., 438; Singleton v. Ins. Co., 66 Mo., 63; Dood Co. v.Green, Guardian, 131 Ga. 568. And we are not called on to determine whether the additional facts set forth in section 6 of the complaint would bring about such an interest, for the reason that, on the facts as they appear, we are of opinion that if the assignment is otherwise valid, plaintiff has a right to recover the proceeds of the policies, whether at the time of the assignment he had an insurable interest in the life of the deceased or not.
It is accepted doctrine here, and elsewhere, that in order to a valid policy of life insurance there must have existed an insurable interest at the time the contract is entered into, but the question whether such a policy, valid at its inception, can be assigned to one who has no insurable interest, has been very much discussed in the courts, and on this there is some conflict in the cases. We consider it, however, as established by the great weight of authority that where an insurant makes a contract with *Page 278 
a company, taking out a policy on his own life for the benefit of himself or for his estate generally, or for the benefit of another, the (289) policy being in good faith and valid at its inception, the same may, with the assent of the company, be assigned to one not having an insurable interest in the life of the insured; provided this assignment is in good faith, and not a mere cloak or cover for a wagering transaction.
Decided intimation in favor of this general principle was given by this Court in the recent case of Pollock v. Household of Ruth, 150 N.C. 211, and the position will be found sustained by a large number of authoritative and well-considered decisions and by text-writers of approved excellence. Ins.Co. v. Armstrong, 117 U.S. 591; Ins. Co. v. Schafer, 94 U.S. 457;Crosswell v. Association, 52 S.C. 103; Rylander v. Allen, 125 Ga. 206; annotated in 5 A. E. Anno Cases, 355; Murphey v. Redd, 64 Mississippi, 614; Brown v. Ins. Co., 172 Mass. 498; Ins. Co. v. Allen, 138 Mass. 24;Steinback v. Diepenbrock, 158 N.Y. 24; Chamberlain v. Butler,61 Neb. 730; Moore v. Guarantee Fund, 178 Ill. 202; Prudential Co.v. Liersch, 122 Mich. 436; 1 Cooley Ins., 262 et seq.; Vance on Ins., 1, 140 et seq.
To quote from some of the cases referred to, in Steinback v.Diepenbrock, supra, it was held: "That one having no insurable interest in the life of another may acquire by assignment a valid policy upon his life and enforce it to the full amount."
And in Murphey v. Redd, supra: "The holder of a valid policy of insurance on his own life, payable to himself or his legal representatives, may assign the same for a valuable consideration, as he may any other chose in action, if there is nothing in the terms of the policy to prevent the assignment, and the assignee or purchaser of such policy, transferred according to its terms, is entitled to the proceeds of the same when due, notwithstanding he may have no insurable interest in the life of the insured.'
In several cases, where the opinion apparently upholds the contrary view, it will be found that the cause was correctly decided and sustainable on the ground that the policy, though taken out in the name of the insured, was procured in pursuance of a scheme and purpose to assign to one having no insurable interest, and that the proposed assignee was cognizant of the arrangement and took part in it. This was true in the case of Warnock v. Davis, 104 U.S. 775, and also in Cammack v.Lewis, 94 U.S. 643. In both of these cases the assignees were parties to the arrangement by which the policies were procured and assigned, and having no insurable interest in the life of the insured, the facts disclosed, as far as the assignments were concerned, a clear case (290) of wagering contract on the duration of a human life, forbidden *Page 279 
by the law, and the assignments were not allowed to stand. Accordingly, we find the same high court, in Ins. Co. v. Armstrong, supra, under a different state of facts, deciding the general principle:
"That a policy of life insurance, without restrictive words, is assignable by the assured for a valuable consideration equally with any other chose in action, where the assignment is not made to cover a mere speculative risk, and thus evade the law against wager policies, and payment thereof may be enforced for the benefit of the assignee, and, under the procedure of many States, in his name."
Undoubtedly, however, there are decisions which directly hold that a life insurance policy, though valid at its inception, may not be assigned to persons having no insurable interest in the life of the insured; and North Carolina has been referred to as upholding this view both in textbooks and in decisions of other courts. If this is a correct interpretation of our cases on this subject, we would not hesitate to hold that they were not well decided; but, while some of them certainly give color to this view, we think that a more careful consideration of our decisions will disclose that in all of them, where the contract was declared void or set aside, it appeared that the assignment of the policy to one having no insurable interest was made in pursuance of a preconceived purpose, and that the assignee had suggested the arrangement or been a party to it.
In Hinton v. Ins. Co., 135 N.C. 314, this was expressly made the basis of the decision. In Powell v. Dewey, 123 N.C. 103 — and this is the case which more nearly justifies the statement that the courts of our State have decided against assignments of this character — it appears, we think, by fair intendment, that the partner and assignee having no insurable interest was cognizant of the scheme and took part in it. In that case the insured and the assignee were partners and associates in the insurance business, "and without any averment or claim of any indebtedness on the part of insured, or that he was to furnish any labor, skilled or otherwise, as his contribution in lieu of money, procured a policy for the benefit of his copartner, and immediately assigned the same to such copartner, the assignee paying all premiums thereon." And the judge, in delivering the opinion, states as the ratio decidendi: "In the case before us, at the very time the policy was issued in which the life of the plaintiff was insured, there was an assignment of the policy to the beneficiary, who paid the first and all the premiums."
Here, as stated, we think it clearly appears that the taking out of the policy and its assignment was a part of one and the same (291) transaction, and the Court holding that one partner, without more, had no insurable interest in the life of the other, declared the entire policy void. True, the opinion may be somewhat misleading in giving too much weight to the payment of the "first and all the premiums," *Page 280 
apparently making this fact determinative, whereas, it is only evidential on the question of good faith (Rylander v. Allen, 125 Ga. 206, supra), but the decision was made to rest on the fact that this was a transaction between these two insurance agents, in which they both took part, and that the taking out of the policy and the assignment, as stated, was one and the same transaction.
In College v. Ins. Co., 113 N.C. 244, the assignee was one of the contracting parties, and the policy taken out for its benefit was clearly a wagering policy. And so in Burbage v. Windley, 108 N.C. 357, the contract of insurance was made directly with the company by one having no insurable interest in the life of the insured, and was against public policy. InAlbert v. Ins. Co., 122 N.C. 92, also referred to and to some extent relied upon by defendant, the decision was in favor of the validity of a policy taken out by an insurant in favor of one having no insurable interest, and the case is not an authority in favor of defendant's position.
In his learned and well-considered opinion in Crosswell v. Ins. Co., 52 S.C., supra, the present Chief Justice of that State, speaking to the suggestion sometimes made in support of the view that these assignments are necessarily invalid, "That the same reasons which condemn a policy procured by one without an insurable interest in the life of an insured, should also condemn an assignment to one without such interest," quotes with approval from May on Insurance, as follows:
"On this point we quote from May on Insurance (Ed. 1891), sec. 398A, which is in brackets, showing that it is new matter: `Indeed, the doctrine that the assignment of a policy to one without interest in the life is as objectionable as the taking out of a policy without interest, does not seem good sense. If this be so, it is difficult to understand how the designation of a beneficiary outside of those having an insurable interest in the life can be upheld. There seems to be a clear distinction between cases in which the policy is procured by the insured bona fide
of his own motion, and cases in which it is procured by another. It is a very different thing to allow a man to create voluntarily an interest in his termination, and to allow some one else to do so at their will. The true line is the activity and responsibility of the assured, and (292) not the interest of the person entitled to the funds. It is well established that a man may take out a policy on his own life payable to any person he pleases, and it is drawing a distinction without a difference to hold that he cannot take out a policy and afterwards transfer its benefits. An assignment by the beneficiary, or by an assignee, unless with the consent of the "life," is, however, a very different matter, and involves what seems to be the real evil that the law is blunderingly seeking to exclude, viz., the obtaining by B of insurance on the life of A, in contradistinction to its obtainment by A for B's benefit.' " *Page 281 
And in Vance on Insurance, p. 140 et seq., the rule is thus stated: "That on principle, and according to the clear weight of authority, an assignment of a life policy to one having no insurable interest therein is perfectly valid, if made in good faith, and not as a cover for fraudulent speculation in life."
And, referring to the opinions of Warnock v. Davis, 104 U.S. 775, andCammack v. Lewis, 82 U.S. 643, and to the subject generally, the author says: "These confusing influences have further been aided and abetted by a catch phrase, which, however, does not state the issue fairly, to the effect that the law will not allow a person to procure by assignment, insurance that he could not procure directly. A fair statement of the issue is found in the postulate that the law will allow the insured to designate a beneficiary under the policy as well by assignment as by original nomination.
"The true principle governing the question may be derived from the statement of some generally accepted rules of law:
"(1) A person insuring his own life may designate any person whatever as beneficiary, irrespective of insurable interest in that beneficiary.
"(2) The law requires an insurable interest only at the inception of the policy, as evidence of good faith. The presence of such interest at any subsequent period is wholly immaterial.
"(3) Life insurance, though based on the theory of indemnity at its inception, is not a contract of indemnity, but chiefly of investment. As a chose in action it has at any time after its issue a recognized value, termed the `reserve value.'
"Hence we conclude that a policy of life insurance, validly issued to one having an insurable interest, becomes in his hands a valuable chose in action, which should be assignable as any other property right, unless such assignment be opposed to some clear rule of public policy."
This, we think, correctly states the true doctrine, and applied to the facts admitted fully justifies the court below in overruling (293) defendant's demurrer, and the judgment to that effect is
Affirmed.
Cited: S. c., 154 N.C. 430; Johnson v. Ins. Co., 157 N.C. 108. *Page 282