## 14716

### ELMORE v. LIFE INS. CO. OF VIRGINIA

(198 S. E., 5)

Messrs. *Shepard K. Nash* and *Willcox, Hardee & Wallace,* for appellant,

Messrs. *McLeod & Shore,* for respondent,

July 7, 1938.

*Per curiam.*

On May 10, 1937, the appellant, without medical examination of the applicant, issued a policy, insuring the life of Selina Driggers, age 64, in the sum of $170.00. The insured died in less than four months thereafter, on September 2, 1937, as a result of coronary sclerosis. The respondent, Luther Elmore, a nephew of the insured, was named as beneficiary in the policy, and, upon the refusal of the appellant to pay the insurance to him, he brought this action and recovered judgment for the full amount.

The appellant made an unsuccessful motion for a directed verdict, predicated upon several grounds, but in our opinion the case may be disposed of by consideration of only one of them. The company contends that the verdict should have been directed, because the undisputed testimony showed that when the beneficiary procured the policy, he had no

insurable interest in the life of his aunt, Selina Driggers, which made it a wagering contract.

There is no dispute between the parties as to the facts in the case.

The respondent was solicited by the agent of the insurance company to take out a policy on his own life, but upon being told that the respondent was carrying all the insurance he wished to carry at that time, the agent suggested that he take out insurance upon some member of his family. It was then agreed that he would insure the life of his aunt, Mrs. Driggers. A reference to the testimony at this point will prove enlightening:

"Q. How many aunts did you have at that time? A. A good many, but she was the only aunt on my father's side.

"Q. And that is the reason you picked her out? A. No, sir.

"Q. Just why did you pick her out? A. Well, I got insurance on different ones.

"Q. Just why did you pick out this particular one? A. No particular one. I got insurance on my father-in-law and my brother-in-law."

The application for the insurance was then given to the respondent by the agent, who stated to him that it would be necessary only for Mrs. Driggers to sign the application in blank; that when it was returned the agent would himself fill in all the blank spaces.

Mrs. Driggers lived with a daughter, about five or six miles from Sumter, where the respondent lived, and he sent this blank to her residence by his brother, who brought it back within a few days, containing the signature of his aunt. At the same time he gave to the respondent a separate piece of paper, on which was written the age of Mrs. Driggers. This application was then delivered by the respondent to the company's agent, who took it away, and without assistance from the respondent, and without having seen Mrs. Driggers, answered all the questions on the blank, and forwarded the application to the insurance company.

The policy was thereafter issued and delivered to the respondent, who paid the initial weekly insurance premium of fifty cents, and all other premiums until the death of the insured.

At the time the application was signed and the policy issued, the respondent says he had not seen his aunt, the insured, for more that a year; knew nothing of her condition of health; did not know that she suffered from chronic heart complaint of a serious nature; did not know that she was under the constant care of a physician, nor that she had been to a hospital for treatment. There is no positive evidence that when Mrs. Driggers signed this application she knew that it was an application for insurance on her life; no evidence, other than this naked signing, that she consented to the issuance of the policy, and no evidence that she knew that the respondent was to be named as beneficiary therein, or that a policy was ever issued.

It is generally held, and we think correctly so, that the relationship of aunt and nephew does not of itself create an insurable interest in favor of either. 37 C. J., page 394; *Hardy v. Aetna Life Ins. Co.,* 152 N. C., 286, 67 S. E., 767; *Wharton v. Home Sec. Life Ins. Co.,* 206 N. C., 254, 173 S. E., 338.

The principle is firmly settled in South Carolina that a person may in good faith and without fraud, collusion, or intent to enter into a wagering contract, lawfully take out a policy of insurance on his own life and make the benefit payable to whomsoever he chooses, even though the beneficiary has no insurable interest in his life. In such case, the interest which the insured has in his own life supports the policy, and prevents it from being condemned as a wagering contract. *Crosswell v. Connecticut Indemnity Association,* 51 S. C., 103, 28 S. E., 200; *Lagrone v. Timmerman,* 46 S. C., 372, 24 S. E., 290.

A different rule, however, prevails when one takes out an insurance policy upon the life of another, making it payable to himself, as here, and himself pay-

ing the premium. In such case the beneficiary must have an insurable interest in the life insured, else it falls under the ban of the law as a wagering contract. *Henderson v. Life Insurance Company of Virginia*, 176 S. C., 100, 179 S. E., 680.

It is very plain from all the testimony that the insured, Mrs. Driggers, was only nominally the contracting party. The only interest which the respondent had in her life is that shown by the evidence, to wit: that he was the child of her brother. Nor can it be successfully argued that the beneficiary had an insurable interest of a pecuniary character in the life of his aunt at the time the policy had its inception. Such an interest, of course, to be insurable, must be an interest in favor of the continuance of the life, and not an interest in favor of its loss or destruction. *Holmes v. Gilman*, 138 N. Y., 369, 34 N. E., 205, 20 L. R. A., 566, 34 Am. St. Rep., 463, and note. For an interesting discussion on "pecuniary interest," see *Crosswell v. Connecticut Indemnity Association, supra.*

No such insurable interest appears in this case. The respondent had no reasonable expectation of benefit or advantage from the continuance of the life of the insured, and, as shown, the mere fact of relationship of aunt and nephew is not sufficient to create such insurable interest. There is no evidence in this case that Mrs. Driggers contributed anything to the support or maintenance of the respondent. The whole evidence negatives any conclusion that she ever had done so, or ever could do so.

The question under discussion has been very recently considered, in the case of *Henderson v. Life Insurance Company of Virginia, supra,* in which practically all of our previous cases have been reviewed. We quote from the concluding paragraph of that opinion (179 S. E., page 692) : " * * * One cannot, by his own act, procure a valid and enforceable policy of insurance for his own benefit upon the life of another in which he has no insurable interest; that such

a contract of insurance is void in its inception and unenforceable on grounds of public policy, being a mere wagering contract."

In the foregoing case it is stated that the rule is enforced and the defense permitted, not in the interest of the defendant insurer, but solely for the sake of the law, and in the interest of good morals and a sound public policy.

The respondent suggests that the lack of an insurable interest may be waived, and that under the evidence in this case it was waived by the insurer. This contention is not tenable. As was said in *Henderson v. Life Insurance Company of Virginia, supra:* "We have recently held (*Hack v. Metz,* 173 S. C., 413, 176 S. E., 314 [95 A. L. R., 196]), that (1) Neither the doctrine of waiver, nor (2) of estoppel can be invoked to make valid and enforceable a wagering and speculative contract which is illegal because it is against good morals and public policy."

The respondent contends that the "facility payment" clause, which reads as follows, would apply: "Such insurance shall be paid to the Beneficiary, if any, last named in this Policy, provided the said Beneficiary shall (1) be of age and (2) surrender this Policy with due proofs of death within thirty days after the date of the death of the Insured; otherwise the Company may make said payment to the Insured's estate or to any connection of the Insured by blood or marriage, or to any person appearing to the Company to be equitably entitled thereto by reason of having incurred expense on behalf of the Insured for maintenance, medical attention or burial. The Company may, during the minority of the Insured, make any other payment or grant any privilege provided in the Policy to any of the persons described in this paragraph."

It is argued that the purpose of this clause is, where there is a question as to who is entitled to the money, to provide payment to such person or persons who may have "incurred expense on behalf of the Insured for

maintenance, medical attention, or burial." A consideration of this clause upon this theory becomes unnecessary, because there is a total absence of testimony bearing upon the question. The respondent does not, either by pleading or by proof, make any claim that he incurred such expense.

We hold that the respondent had no insurable interest in the life of his aunt, Mrs. Driggers. In our opinion, this policy, which was procured upon the initiative of the respondent, constituted a wagering and speculative contract, as a matter of law. It follows that the appellant's motion for a directed verdict should have been granted.

The record shows that the appellant tendered the return of all premiums paid by the beneficiary, but it does not show the amount of the premiums so paid. However, this should be easy of ascertainment.

The judgment of the lower Court is reversed, and the cause is remanded, with instructions to enter judgment for the appellant under Rule 27 of this Court. It is further adjudged that the appellant refund to the respondent within ten days from the filing of the remittitur, all premiums paid by him, with legal interest up to the date of the said tender, and if it fail to do so, leave is granted to the respondent to enter judgment against the appellant for said amount.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER, and FISHBURNE, and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE CARTER did not participate on account of illness.