## 16401

### WARREN v. PILGRIM HEALTH & LIFE INS. CO.
(60 S. E. (2d) 891)

454

*Messrs. Mays, Featherstone & Bradford,* of Greenwood, *for Appellant,*

*Messrs. Nicholson & Nicholson,* of Greenwood, *for Respondent,*

August 28, 1950.

TAYLOR, Justice.

Appellant issued its insurance policy, dated February 4, 1946, upon the life of John Belcher, an illiterate colored man living near the City of Greenwood, South Carolina. The application was in the handwriting of appellant's colored agent, R. H. Burton, and signed by the applicant making his mark. The insured, John Belcher, died February 15, 1948, two years and eleven days after the issuance of the policy. The application recited among other things that John Belcher was forty-one years of age and that the beneficiary, Ben Warren, another negro who could neither read nor write, was the nephew of the insured when in fact he was not related in any respect to the insured although he called him Uncle John. The coroner's physician reported that the age of the deceased was seventy-nine years and gave as cause of death "cardio-renal" and the remote cause "senility."

The matter came on for trial before Honorable A. L. Gaston and a jury at the April term of Common Pleas Court for Greenwood County, 1949, resulting in a verdict of $220 .00 for the respondent, the face amount of the policy. The appellant moved for judgment *non obstante veredicto*, or in the alternative for a new trial, which was refused, and now comes to this Court contending, first, that the contract of insurance was void as a gambling contract; second, that the insured, John Belcher, was mentally incompetent and therefore unable to understand an application for insurance and to authorize their agent, Burton, to sign his name thereto; third, that the evidence so clearly preponderates against the verdict that it must be assumed that the jury was influenced by outside considerations and that the judge abused his discretion when he refused to set aside the verdict.

In support of its position relative to the first question, appellant cites the cases of *Crosswell v. Conn. Indemnity Association,* 51 S. C. 103, 28, S. E. 200, 205, and *Rogers v. Atlantic Life Insurance Co.,* 135 S. C. 89, 133 S. E. 215, 45 A. L. R. 1172. These authorities are to the effect that one cannot obtain valid insurance upon the life of another in whom he has no insurable interest; but it is generally held that one may procure insurance on his own life and make it payable to whomever he wishes, if in good faith and not to cover a wagering policy, this being founded upon the principle that everyone has an insurable interest in his own life. 29 Am. Jur. 312, Insurance, Section 355; 44 C. J. S., Insurance, § 202, P. 899.

*The Crosswell case* states in part: "A sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals. It is surely not a sound policy to permit insurers to contract to insure the lives of persons, receive premiums therefor as long as the insured, the beneficiary, or the assignee will continue to pay, and then, when the time comes for the insurers to pay what they agreed to pay, allow them to escape their contract on the ground of want of insurable interest in the life insured, unless it clearly appears that such contracts are pernicious and dangerous to society. Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak."

Appellant's agent having died before the trial, only the beneficiary could testify as to what actually transpired, and he stated that at that time he had an insurance policy with the same company but had let it lapse after the controversy in question arose and that the company's agent, Burton, collected the premiums thereon each week; that on the date in question Burton came by his home for this purpose and asked that he accompany him on his rounds, which he did, remaining in the car; that he did not hear the conversation

between the agent, Burton, and the insured, John Belcher, as that took place on the insured's front porch; that no one was present except the two.

A portion of the testimony appears as follows:

"Q. Did you tell Randolph Burton to write that policy on John Belcher's life? A. No sir; they write it up there that day, I didn't know nothing about it.

"Q. What did Randolph Burton tell you about it? A. He said he had writ the policy on John Belcher.

"Q. And what did he say you had to do with, if anything? A. He said Uncle John had taken it out and he was going to pay on it as long as he could and then if he couldn't, would I do it, and I told him I would as far as I could.

"Q. How long was that time after he wrote the policy that he said that? A. I don't know exactly.

"Q. Well, how long was it before Randolph brought you the policy? A. I don't know exactly, but it was around three or four months.

"Q. Three or four months after the insurance was taken out? A. Yes, sir."

The testimony is susceptible to the conclusion that the insured himself paid the premiums on the policy for several months until such time as it was brought to the beneficiary by appellant's agent who stated that the insured could no longer keep up the payments and asked that he (the beneficiary) do so. The insured having procured the policy and paid the weekly premiums thereon for several months and the Trial Court having determined the facts to be other than that contended by appellant, this Court is concluded thereabout. *Ellison v. Independent Life & Accident Insurance Co.*, 216 S. Ct. 475, 58 S. E. (2d) 890; *Metropolitan Life Insurance Co. v. Bates*, 213 S. C. 269, 49 S. E. (2d) 201.

The factual findings also bind this Court with respect to the second and third questions. The insured's wife, Janie Belcher, testified that the insured was in

no mental condition to understand the meaning of an insurance policy. However, she did testify that he handled approximately ten dollars per month. Another witness testified that within two years immediately proceding the insured's death he had discussed with the insured the matter of life insurance. If the insured at the time the application was filled out by appellant's agent was in the mental and physical state as his wife testified, it is inconceivable that it was not apparent to all who saw and talked with him; even should this be so, appellant is not in position to profit thereby as a wrong doer cannot shield himself from liability by asking the law to condemn the credulity of the ignorant and unwary. *Thomas v. American Workmen*, 197 S. C. 178, 14 S. E. (2d) 886, 136 A. L. R. 1. This, considered in conjunction with the testimony to the effect that John Belcher made application for the issuance of the policy through appellant's agent and that he or someone other than the beneficiary paid the weekly premiums thereon for three or four months and the reasonable inferences to be drawn therefrom, is sufficient to support the verdict of the jury.

For the foregoing reasons, we are of the opinion that all exceptions should be dismissed and the judgment of the Trial Court affirmed, and it is so ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.