621 S.E.2d 389

**Rhonda W. BROWNING, Respondent,**

v.

**Gregory W. BROWNING, Appellant.**

**No. 4031.**

Court of Appeals of South Carolina.

Submitted Sept. 1, 2005.

Decided Oct. 17, 2005.

258

Spencer Andrew Syrett, of Columbia, for Appellant.

James M. Saleeby, Sr., of Florence and Marian D. Nettles, of Lake City; for Respondent.

BEATTY, J.:

In this domestic contempt action, Gregory W. Browning (Husband) appeals the family court's order, arguing the court erred in: (1) finding Husband in contempt for failing to timely comply with the parties' Property Settlement Agreement; (2) ordering Husband to submit to a medical examination so that Rhonda W. Browning (Wife) could obtain a life insurance policy on Husband; (3) addressing issues regarding a life insurance policy for the benefit of the parties' emancipated son; and (4) awarding Wife attorney's fees. We affirm in part, reverse in part, and modify in part.[1]

## FACTS

Husband and Wife were married on August 16, 1975, and had one child during the marriage. On September 15, 2000, the parties separated. Prior to a hearing for temporary relief, the parties entered into a Property Settlement Agreement (Agreement) on March 7, 2001. By order dated May 29, 2001, the family court approved the Agreement. The parties were later divorced on July 8, 2002.

On February 2, 2004, Wife filed an action seeking to hold Husband in contempt for violating the Agreement. In her amended complaint, Wife alleged, *inter alia,* Husband: (1) failed to pay Wife her one-half share of the equity in the former marital home within thirty days of Wife vacating the home; (2) refused to submit to a medical examination in order that Wife could obtain a life insurance policy on Husband; and (3) failed to provide proof of coverage to Wife regarding a $2,000,000 life insurance policy for the benefit of the parties' emancipated son. In conjunction with these assertions, Wife also requested Husband pay her attorney's fees as well as interest for the seven-month period that Husband delayed in

---

1. Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.

paying her share of the former marital home. In his Answer, Husband denied the allegations and sought, as a counterclaim, for the court to find Wife in contempt for failing to comply with several provisions of the Agreement.

After a hearing, the family court issued an order in which it: (1) found Husband failed to pay Wife, within the prescribed thirty-day period, her one-half interest in the former marital home; (2) ordered Husband to pay twelve percent interest for the seven-month period that he delayed in paying Wife her $175,000 share; (3) ordered Husband to submit to a medical examination so that Wife could procure a life insurance policy on Husband; (4) ordered Husband to provide proof of insurance coverage in which he indicated that the parties' emancipated son was the beneficiary of a $2,000,000 life insurance policy; and (5) awarded Wife attorney's fees in the amount of $2,700.[2] Husband appeals.

## STANDARD OF REVIEW

In appeals from the family court, this court may find facts in accordance with its own view of the preponderance of the evidence. *Dearybury v. Dearybury*, 351 S.C. 278, 283, 569 S.E.2d 367, 369 (2002). However, this broad scope of review does not require us to disregard the family court's findings. *Bowers v. Bowers*, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002); *Badeaux v. Davis*, 337 S.C. 195, 202, 522 S.E.2d 835, 838 (Ct.App.1999). Nor must we ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## DISCUSSION

### I. Contempt

Husband argues the family court erred in finding him in contempt and awarding Wife twelve percent interest for the seven months he delayed in paying Wife her interest in the

---

2. We note the family court ruled on several other issues regarding the Agreement. However, we need not list or address them given these rulings are not pertinent to the instant appeal.

marital home. Although Husband admits that he failed to timely pay Wife her share, he contends the seven-month delay was not willful given Wife created the delay. Specifically, he claims he was unable to immediately refinance the mortgage with which to pay Wife because, unbeknownst to him, Wife opened several credit accounts in his name. Husband asserts financing was not approved until these accounts were resolved and Wife completed information required for refinancing.

"The power to punish for contempt is inherent in all courts and is essential to preservation of order in judicial proceedings." *In re Brown,* 333 S.C. 414, 420, 511 S.E.2d 351, 355 (1998). Contempt results from a party's willful disobedience of a court order. *Smith v. Smith,* 359 S.C. 393, 396, 597 S.E.2d 188, 189 (Ct.App.2004); S.C.Code Ann. § 20–7–1350 (Supp.2004) (A party may be found in contempt of court for the willful violation of a lawful court order.). "A willful act is one which is 'done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.'" *Widman v. Widman,* 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct.App.2001) (quoting *Spartanburg County Dep't of Soc. Servs. v. Padgett,* 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988)). "[B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct." *Widman,* 348 S.C. at 119, 557 S.E.2d at 705.

"In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondent's noncompliance with the order." *Hawkins v. Mullins,* 359 S.C. 497, 501, 597 S.E.2d 897, 899 (Ct.App.2004). "Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order." *Widman,* 348 S.C. at 120, 557 S.E.2d at 705.

"A trial court's determination regarding contempt is subject to reversal where it is based on findings that are without evidentiary support or where there has been an abuse of discretion." *Henderson v. Puckett,* 316 S.C. 171, 173, 447

S.E.2d 871, 872 (Ct.App.1994). "Even though a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the court's discretion." *Hawkins*, 359 S.C. at 503, 597 S.E.2d at 900. "An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support." *Townsend v. Townsend*, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct.App.2003).

We find the family court did not abuse its discretion in holding Husband in contempt. Pursuant to the terms of the Agreement, Wife was permitted to reside in the marital home until the parties' son enrolled in college. Wife then had thirty days to vacate the home. At that point, Husband was given the option of purchasing Wife's one-half share of the equity in the marital home. On January 1, 2002, Husband informed Wife that he intended to exercise this option. In compliance with the Agreement, Wife vacated the marital home on September 17, 2002. Thus, Husband was required to pay Wife her $175,000 equity share by October 17, 2002. Husband did not, however, pay Wife until approximately seven months later on May 16, 2003.

Although Husband violated the Agreement by failing to strictly comply with the thirty-day time period, we find Husband did not willfully cause the entire seven-month delay. Husband's mortgage broker testified Husband initiated the process to refinance the marital home in 2002. He further testified there was a "short delay" in the process due to Husband's credit score, which had been adversely affected by accounts Wife had apparently opened without Husband's knowledge. Additionally, he stated the remaining delay resulted because Wife did not sign over title to the property for several months after the quitclaim deed to the home was sent to her attorney's office. He testified the deed was sent to her attorney in October or November of 2002 and was returned to Husband in February 2003. He stated there was no explanation for this delay and that the refinancing loan went through within three and a half weeks after the deed was received. Wife also did not offer any explanation for the delay.

Because Wife did not expeditiously sign and return the quitclaim deed, we find Husband should not be penalized for

the time period preceding his receipt of the deed in February 2003. Accordingly, we modify the family court's order and award Wife interest in the amount of $5,250, which represents the three-month delay between February 2003 and May 2003.[3]

## II. Life Insurance

### A.

 Husband argues the family court erred in requiring him to submit to a medical examination in order that Wife could obtain a life insurance policy on his life. Because Wife's right to alimony had ended and all of the parties' property claims had been settled, Husband asserts Wife no longer has an insurable interest in his life. Thus, he contends he should not be forced to assist Wife in procuring the life insurance policy. We find the court erred as a matter of law.

 "Whether a property settlement agreement should be deemed to bar the divorced wife from receiving insurance benefits is a question of the construction of the agreement itself." *Estate of Revis v. Revis,* 326 S.C. 470, 477, 484 S.E.2d 112, 116 (Ct.App.1997). When parties merge their settlement agreement into a decree, the family court transforms it from a contract between the parties to a decree of the court. *Emery v. Smith,* 361 S.C. 207, 214, 603 S.E.2d 598, 601 (Ct.App.2004). "Thereafter, the agreement, as part of the court order, is fully subject to the family court's authority to interpret and enforce its own decrees." *Id.* at 214, 603 S.E.2d at 601–02.

In order to analyze this issue, we must consider the controlling provision of the Agreement within the context of general insurance law regarding an insurable interest. The Agreement states in pertinent part:

The husband and wife each grant to the other the right to maintain an insurable interest insuring the others [sic] life. [Husband] has the right to insure [Wife's] life he shall own

3. $175,000 × 12% × 3/12 = $5,250. *See* S.C.Code Ann. § 34–31–20(B) (Supp.2004) ("All money decrees and judgments of courts enrolled or entered shall draw interest according to law. The legal interest is at the rate of twelve percent a year."). We note the General Assembly amended this subsection on March 21, 2005. This amendment, however, applies to all judgments entered on or after July 1, 2005. Act No. 27, 2005 S.C. Acts 119.

the policy and be responsible for paying all the premiums. [Wife] likewise may insure [Husband's] life she will likewise own the policy and she will be responsible for the premiums.

■ In terms of what is required to obtain a policy of insurance, our appellate courts have stated:

In this country, it is a rule of law that one cannot insure for his own benefit the property of another in which he has no interest. Insurance law accepts as a settled rule that an insured must possess an interest of some kind in the subject matter of the policy. . . . In order to recover on a policy of insurance, the insured must prove an insurable interest in the property both at the time the policy is issued and becomes effective and at the time of the loss.

*Powell v. Insurance Co. of N. America,* 285 S.C. 588, 589–90, 330 S.E.2d 550, 551–52 (Ct.App.1985) (citations omitted); *see Warren v. Pilgrim Health & Life Ins. Co.,* 217 S.C. 453, 456, 60 S.E.2d 891, 893 (1950)("[O]ne cannot obtain valid insurance upon the life of another in whom he has no insurable interest."). Where an insurable interest does not exist at the time the contract for insurance was made, the insurance contract is void from its inception. *Abraham v. New York Underwriters Ins. Co.,* 187 S.C. 70, 78, 196 S.E. 531, 534 (1938). Additionally, this court has stated:

Policies will be maintained where it is clear that the party insured had an interest which would be injured in the event the peril insured against should happen. It is not necessary to constitute an insurable interest that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence.

*Benton & Rhodes, Inc. v. Boden,* 310 S.C. 400, 404, 426 S.E.2d 823, 826 (Ct.App.1993).

■ An "insurable interest" has been defined as follows: It may be said, generally, that any one [sic] has an insurable interest in property who derives a benefit from its existence or would suffer loss from its destruction. An insurable interest in property is any right, benefit or advantage arising out of or dependent thereon, or any liability in respect thereof, or any relation to or concern therein of such

a nature that it might be so affected by the contemplated peril as to directly damnify the insured.

*Benton,* 310 S.C. at 403, 426 S.E.2d at 825 (quoting *Crook v. Hartford Fire Ins. Co.,* 175 S.C. 42, 48, 178 S.E. 254, 257 (1935)); *see Hack v. Metz,* 173 S.C. 413, 418, 176 S.E. 314, 316 (1934)("A person can have no insurable interest where his only right arises under a contract which he had no authority to make."). "An insurable interest is in the nature of an inchoate right, everpresent [sic] for perfection in those who possess the right, but never perfected until all legal requirements have been performed." *Ramey v. Carolina Life Ins. Co.,* 244 S.C. 16, 20, 135 S.E.2d 362, 364 (1964) (citation omitted).

When the parties entered into the Agreement, Wife was entitled to twenty-four months of alimony. Because Wife was receiving alimony, she had an insurable interest in Husband's life. *See Wooten v. Wooten,* 364 S.C. 532, 548, 615 S.E.2d 98, 106 (2005) ("It is a settled proposition of law that a former wife who is entitled to alimony has an insurable interest in her former husband's life. The parties in a divorce proceeding may agree, in a private agreement subsequently merged into the court's order, that a payor spouse shall maintain life insurance to secure an award of alimony.") (citation omitted). However, once this obligation ended, Wife no longer had an insurable interest nor, can we discern from the record, a pecuniary interest.[4] *See Roberts v. Southwestern Life Ins. Co.,* 244 S.W.2d 302, 307 (Tex.Civ.App.1951) (recognizing "upon divorce and termination of insurable interest, a policy cannot be beneficially owned by one divorced spouse on life of the other on basis of past relationship").

Significantly, this case does not present a scenario where Husband seeks to eliminate Wife as a beneficiary for an existing policy. Instead, Wife is attempting to obtain a new life insurance policy on Husband after his financial obligation

---

4. We note Wife contends that she has an insurable interest in Husband's life because she is potentially liable for any debt associated with Husband's medical practice. We disagree with this contention given Wife, in the Agreement, specifically waived any interest in Husband's practice and Husband agreed to indemnify Wife for any payments associated with the practice. Moreover, Wife's claim of potential liability is vague at best. She offers no specific debt or liability she has as a result of Husband's medical practice.

to her has ceased. *Cf. Estate of Revis*, 326 S.C. at 477, 484 S.E.2d at 116 ("Although a divorce does not itself affect a beneficiary's right to insurance proceeds, it is generally recognized that a beneficiary may contract this right away through a separation or property settlement agreement, even if the beneficiary designation is not formally changed."); *Duncan v. Investors Diversified Servs., Inc.*, 285 S.C. 467, 470, 330 S.E.2d 295, 296 (1985) (stating "divorce does not of itself operate to defeat the beneficiary's claim"); *Hughes v. Scholl*, 900 S.W.2d 606, 607 (Ky.1995) (recognizing "divorce alone does not disturb a former spouse's status as an insurance policy beneficiary").

Furthermore, we believe ordering Husband to submit to a medical examination against his will, *i.e.*, forcing him to consent, where there is no insurable interest would violate public policy. *See Ramey*, 244 S.C. at 22, 135 S.E.2d at 365 (It is well settled that "[a] policy of insurance taken out on the life of another without his knowledge or *consent* is void and against public policy in that it might be a fruitful source of crime.")(emphasis added); *Hack*, 173 S.C. at 418, 176 S.E. at 316 ("It has been broadly stated that insurance taken out on the life of another, without the latter's consent is against public policy and void.") (citation omitted).

Additionally, we reject Wife's assertion that Husband consented to a perpetual insurable interest by entering into the Agreement. *See Abraham*, 187 S.C. at 78, 196 S.E. at 534 (recognizing "[n]either the doctrine of waiver nor the doctrine of estoppel can be invoked to give legality" to a contract where there exists no insurable interest, and thus, is absolutely null and void from its inception).

Because Wife lacked an insurable interest, we find ordering Husband to consent to a medical examination would violate public policy. Accordingly, we hold the family court erred regarding the life insurance policy for the benefit of Wife. *See Elmore v. Life Ins. Co. of Virginia*, 187 S.C. 504, 508–09, 198 S.E. 5, 7 (1938) ("One cannot, by his own act, procure a valid enforceable policy of insurance for his own benefit upon the life of another in which he has no insurable interest; that such a contract of insurance is void in its inception and unenforceable on grounds of public policy, being

a mere wagering contract.") (citation omitted); *Henderson v. Life Ins. Co. of Virginia*, 176 S.C. 100, 113–14, 179 S.E. 680, 685–86 (1935)("The law does not allow one who has no insurable interest in the life of another, to insure it for his benefit, for the reason that it is a mere wager and holds out a temptation to fraud, the insurer having no interest in the life of the assured and having a direct interest in his death.") (citations omitted). Once the obligation of support is extinguished there is no insurable interest of right and the acquisition of any new insurance policy must be with the consent of the insured spouse or former spouse.

## B.

Husband argues the family court erred in ordering additional requirements for the life insurance policy on Husband's life for the benefit of the parties' emancipated son.

As evidenced by the terms of the Agreement, Husband owned a $2,000,000 life insurance policy issued on March 3, 1993, which designated the parties' son as the beneficiary. The Agreement further provided that Husband was required to provide Wife with written documentation verifying that son remained as beneficiary. In her contempt action, Wife requested the family court order Husband to provide her with proof of coverage and beneficiary designation. She also sought proof that Husband's cash withdrawal from the policy had not reduced the face amount. In ruling on this issue, the family court held that Wife could request, and Husband must provide, verification of insurance coverage and beneficiary designation at reasonable periodic intervals. The court also limited Husband to a total of $295,826 in withdrawals from this policy and further found the policy should remain in effect with no time limitations.

We find, and Wife concedes, the court granted relief beyond that which was requested in Wife's pleadings. During the hearing, Husband informed the court that the $2,000,000 life insurance policy was still in effect and the parties' son was the designated beneficiary. Because this information sufficiently satisfied the relief Wife requested in her pleadings, the court's additional rulings regarding the policy constituted error. Accordingly, we reverse the court with respect to ordering

Husband: (1) to maintain the policy in apparent perpetuity; (2) to provide Wife or the son continuing coverage and beneficiary information; and (3) to limit his cash withdrawals from the policy. *See Bass v. Bass,* 272 S.C. 177, 180, 249 S.E.2d 905, 906 (1978) (holding the family court cannot award relief that is not contemplated by the pleadings).

## III. Attorney's Fees

Finally, Husband asserts the family court erred in awarding attorney's fees to Wife. He argues the award of attorney's fees should be vacated if this court rules in his favor on the issues that he has raised on appeal.

"An award of attorney's fees and costs is a discretionary matter not to be overturned absent abuse by the trial court." *Donahue v. Donahue,* 299 S.C. 353, 365, 384 S.E.2d 741, 748 (1989). In deciding whether to award attorney's fees, the family court should consider: (1) the parties' ability to pay their own fee; (2) the beneficial results obtained by counsel; (3) the respective financial conditions of the parties; and (4) the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). The factors the family court should consider in awarding reasonable attorney's fees and costs include: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) the professional standing of counsel; (4) the contingency of compensation; (5) the beneficial results obtained; and (6) the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Although we have ruled in favor of Husband on several issues, this alone is not dispositive of our decision regarding the award of attorney's fees to Wife. First, Wife prevailed on several issues at trial. Secondly, Husband's failure to comply with the terms of the Agreement necessitated Wife filing the action for contempt. For example, Husband concedes he delayed in transferring the parties' mountain property and beach property to Wife. Finally, the court properly considered the requisite factors and exercised its discretion in limiting Wife's award to $2,700 despite her request for $3,700. Accordingly, we decline to vacate Wife's award of attorney's fees.

## CONCLUSION

Based on the foregoing, we affirm the decision of the family court holding Husband in contempt and awarding Wife attorney's fees. We reverse the court's order requiring Husband to submit to a medical examination so that Wife could procure an insurance policy on his life. Additionally, we reverse the court's decision ordering Husband to provide additional information to Wife concerning a life insurance policy for the benefit of the parties' emancipated son. Finally, we modify the court's order with respect to the amount of the award of post-judgment interest to Wife.

**AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.**

GOOLSBY and SHORT, JJ., concur.