THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Anne Galbreath-Jenkins, Appellant,
 v.
 Floyd Ronald Jenkins, Jr., Respondent.
 
 
 

Appeal From Charleston County
Tommy B. Edwards, Family Court Judge

Unpublished Opinion No. 2007-UP-054
Submitted January 1, 2007  Filed February 7, 2007

AFFIRMED

 
 
 
 Margaret D. Fabri, of Charleston, for Appellant.  
 Anne Frances Bleecker, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Anne Galbreath-Jenkins (Mother) appeals the family courts order finding her in both civil and criminal contempt and failing to find Floyd Ronald Jenkins (Father) in civil contempt.  We affirm.[1]  
FACTS
The parties were married August 17, 1991 and have one child, born in 2002.  The parties separated on June 28, 2003.  They entered into a Separate Maintenance and Support Agreement, which was approved by the family court.  The agreement discussed custody and visitation and contemplated Mothers relocation from Charleston to Williamsburg, Virginia, to be near her family.  In the spring of 2004, Wife moved from Williamsburg to Orrs Island, Maine.  
In 2004, the parties began having trouble concerning visitation.  Most of the problems stemmed from Mothers refusal to allow Father overnight visitation with the child.  There were numerous instances where Father had traveled to Maine to see the child and was not allowed overnight visitation he believed he was entitled to.  
These disagreements led to Father filing a complaint in September 2004 seeking modification of the custody and visitation provisions of the final order.  A temporary hearing was set for November 1, 2004.  On Fathers petition, the family court also issued a rule to show cause ordering Mother to appear and show cause why she should not be held in contempt for failing to allow overnight visitation and for alienating the childs affections from Father.  The hearing was continued by consent.  
Prior to the temporary hearing, the parties reached an agreement and submitted an interim order to the court.  That order states in pertinent part:

 The attorneys and the parties will use their best efforts to settle all pending issues prior to mediation.  If the parties cannot, then they shall attend mediation that must be completed by December 7th.  

Mediation was scheduled for December 3, 2004.  However, this date was later postponed by agreement because Mothers counsel had to undergo medical testing.  The mediation was rescheduled for February 22, 2005.  Mother was made aware of the new mediation date and initially planned to appear by telephone.  However, before the mediation date, Mother informed Father she had no obligation to mediate and that she did not plan to participate.  Father appeared for the mediation, but Mother was not there.  
Father then filed a second petition asking the family court to issue a rule to show cause based on Mothers failure to attend mediation.  The hearing was held on April 21, and May 17 and 18, 2005.  The family court held Mother in civil contempt for alienation of affection and for her failure to allow overnight visitation.  Mother could either serve ninety days in jail or reimburse Father $8,000 in attorneys fees incurred in bringing the action.  She was also required to give Father an additional week of summer vacation with the child in 2005.  The family court also held Mother in criminal contempt for her failure to appear at the scheduled mediation.  She was ordered to pay a $500 fine, which she has done, and attend mediation.  The family court did not hold Father in contempt for filing a new action prior to mediation.  
Mother filed a Rule 59(e), SCRCP motion asserting the family court erred (1) in finding Mother in contempt for denying Father overnight visitation; (2) in finding Mother in willful contempt for removing a picture of Father from the childs bedroom; (3) in finding Mother in criminal contempt for failing to appear at mediation; (4) in failing to find Father in contempt for failing to seek mediation prior to filing a new action; and (5) in failing to find Father in contempt for his refusal to timely sign a quit claim deed in order to effectuate the closing on the marital home.[2]  The motion was denied and this appeal followed.  
STANDARD OF REVIEW
On appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence.  Murdock v. Murdock, 338 S.C. 322, 328, 526 S.E.2d 241, 244-45 (Ct. App. 1999).  A finding of contempt rests within the sound discretion of the trial court and results from willful disobedience of a court order.  Henderson v. Henderson, 298 S.C. 190, 197, 379 S.E.2d 125, 129 (1989).  A trial courts determination regarding contempt is subject to reversal where it is based on findings that are without evidentiary support or where there has been an abuse of discretion.  Henderson v. Puckett, 316 S.C. 171, 173, 447 S.E.2d 871, 872 (Ct. App. 1994).  Even though a party is found to have violated a court order, the question of whether or not to impose sanctions remains a matter for the courts discretion.  Hawkins v. Mullins, 359 S.C. 497, 503, 597 S.E.2d 897, 900 (Ct. App. 2004).  An abuse of discretion occurs either when the court is controlled by some error of law or where the order, based upon findings of fact, lacks evidentiary support.  Townsend v. Townsend, 356 S.C. 70, 73, 587 S.E.2d 118, 119 (Ct. App. 2003).
A proceeding and judgment involving criminal contempt is heard on appeal as if from a judgment in a criminal case.  In re Moore, 79 S.C. 399, 400, 60 S.E. 947, 947 (1908).  In criminal cases, an appellate court reviews errors of law only and is bound by factual findings of the trial court unless clearly erroneous.  State v. Wilson, 345 S.C. 1, 5-6, 545 S.E.2d 827, 829 (2001); State v. Cutter, 261 S.C. 140, 147, 199 S.E.2d 61, 65 (1973); State v. Butler, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct. App. 2003).  
LAW/ANALYSIS
Mother contends the family court erred in finding her in contempt in numerous instances and in failing to find Father in contempt.  We disagree.  
Contempt results from a partys willful disobedience of a court order.  Smith v. Smith, 359 S.C. 393, 396, 597 S.E.2d 188, 189 (Ct. App. 2004).  A willful act is one which is done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law.  Widman v. Widman, 348 S.C. 97, 119, 557 S.E.2d 693, 705 (Ct. App. 2001) (quoting Spartanburg County Dept of Soc. Servs. v. Padgett, 296 S.C. 79, 82-83, 370 S.E.2d 872, 874 (1988)).  [B]efore a court may find a person in contempt, the record must clearly and specifically reflect the contemptuous conduct.  Widman, 348 S.C. at 119, 557 S.E.2d at 705.
In a proceeding for contempt for violation of a court order, the moving party must show the existence of a court order and the facts establishing the respondents noncompliance with the order.  Hawkins, 359 S.C. at 501, 597 S.E.2d at 899.  Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order.  Widman, 348 S.C. at 120, 557 S.E.2d at 705.  Furthermore, it is generally recognized that where a contemnor is unable, without fault on his part, to obey a court order, he is not to be held in contempt.  Hicks v. Hicks, 280 S.C. 378, 381, 312 S.E.2d 598, 599 (Ct. App. 1984). 
The instant case involves both civil and criminal contempt.  The purpose of civil contempt is to coerce the defendant to do the thing required by the order for the benefit of the complainant.  Poston v. Poston, 331 S.C. 106, 111, 502 S.E.2d 86, 88 (1998).  Civil contempt must by proven by clear and convincing evidence.  Id. at 113, 502 S.E.2d at 89.  The primary purposes of criminal contempt, on the other hand, are to preserve the courts authority and to punish the disobedience of its orders.  Id. at 111, 502 S.E.2d at 88 (citing State v. Bevilacqua, 316 S.C. 122, 128, 447 S.E.2d 213, 217 (Ct. App. 1994)).  Criminal contempt must be proven beyond a reasonable doubt.  Id. at 113, 502 S.E.2d at 89.
I.  Failure to Allow Overnight Visitation 
Mother contends the family court erred in finding her in civil contempt for failing to allow Father overnight visitation with the child.  We disagree.  
The agreement contains numerous provisions regarding visitation with the child.  Section Twelve, Paragraph (a) of the agreement provides that [u]ntil [the child] reaches the age of three (3) years old, Husband/Father will have unlimited, unsupervised visitation time with [the child].  This time will be spent in Williamsburg, Virginia and [the child] will not be spending overnights with Husband/Father.  However, immediately following that paragraph, the agreement states: 

 (b) In addition to the unrestricted visitation as referenced above in paragraph (a), Husband/Father shall have visitation with [the child] for six (6), eight (8) hour periods, being solely responsible for [the child]s supervision for these . . . [visits], to occur over a six (6) month period. . . .  After six (6) months and the six (6), eight (8) hour periods are accomplished by Husband/Father, Husband/Father shall then, in addition to the unrestricted visitation as set forth above in paragraph (a), Husband/Father shall be entitled to one (1) weekend of overnight visitation per month.  

This paragraph is followed by the statement that [u]pon [the child] reaching her second (2nd) birthday, Husband/Father will be entitled to seven (7) consecutive overnight days per year with [the child], so long as the prior visitation has gone well and [the child] is demonstrably happy with [Husband/Father]s visitation.  
Although Paragraph (a) standing alone would seem to prevent overnight visitation by Father until the child is three, it can also be interpreted to mean that when the child attains age three, Father would be entitled to overnight visitation even if he does not meet the requirements set out in the following paragraphs.  Paragraphs (b) and (c) set forth conditions whereby Father can enjoy overnight visitation in addition to those he would be entitled to if he merely waited until the child attained age three.  Once Father complied with those conditions, he was entitled to overnight visitation prior to the child reaching age three.  The family court considered the provisions of the agreement and found Father had clearly met his overnight visitation requirement by July of 2004.  See Browning v. Browning, 366 S.C. 255, 264, 621 S.E.2d 389, 393 (Ct. App. 2005) (When parties merge their settlement agreement into a decree, the family court transforms it from a contract between the parties to a decree of the court.  Thereafter, the agreement, as part of the court order, is fully subject to the family courts authority to interpret and enforce its own decrees.) (internal citations omitted).  There is no dispute that Father visited the child at least once per month beginning in November of 2003.  It seems apparent from the record that Mother was not complying with the spirit of the agreement or with the specific provisions allowing visitation once the conditions outlined had been met.  
Though Mother contends Father had not met his requirements, much of her argument is based on her belief that the final order approving the October 29, 2003 agreement was not signed until March of 2004, and consequently, the six months would not have begun until then.  However, though the order was not signed until March 26, 2004, it was made effective nunc pro tunc to December 19, 2003.  
Mother further argues the family court incorrectly placed the burden on her to show that Father had not met the time requirements.  This was not in error as a prima facie case of contempt had already been made and the burden then shifted to Mother.  See Widman, 348 S.C. at 120, 557 S.E.2d at 705 (Once the moving party has made out a prima facie case, the burden then shifts to the respondent to establish his or her defense and inability to comply with the order.).  Furthermore, because the family court was in a better position to judge the witnesses demeanor and credibility, its findings should be given broad discretion.  Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003).  Accordingly, the family court did not err in finding Mother in civil contempt for failure to allow overnight visitation.  
II.  Conduct Engaged to Undermine the Childs Affection and Respect for Husband 
Mother contends the family court erred in finding her in contempt for undermining the childs affection and respect for Father.  We disagree.  
The agreement states, in relevant part: 

 The parents further agree that they will consult with each other and cooperate in making decisions regarding [the child], and that neither of them shall do or say anything to [the child] or within her hearing, directly or indirectly, to undermine [the child]s affection and respect for the other parent.  Each parent agrees to speak to each other and of each other in a respectful manner at all times, especially in front of [the child] and will insist and to the extent possible ensure that friends and family members abide by this strict rule as well.  

The family court found Mother in contempt for undermining the childs affection and respect for Father for numerous reasons including denying overnight visitation, in yelling at him in front of the child, and in taking Fathers photograph out of the childs room.  
The family court specifically found, and we agree, the yelling incident, standing alone, is probably not sufficient to trigger a citation of contempt.  However, that coupled with the numerous other instances of Mothers behavior, is enough to find her in civil contempt.  Accordingly, the family courts holding of civil contempt was not erroneous.  
III.  Failure to Attend Mediation 
Mother contends the family court erred in finding her in criminal contempt for not attending the February 22, 2005 mediation.  Father argues Mother has waived her right to appeal this issue by paying the fine ordered by the family court.  We agree and find the appeal of that issue is waived.  See Chappell v. Chappell, 282 S.C. 376, 377-78, 318 S.E.2d 590, 591 (Ct. App. 1984) (holding that father, who paid contempt fine for interfer[ing] with the due administration of justice by attempting to pay child support arrearages to clerk in loose change, waived right to appeal).  
IV.  Failure to Seek Mediation Before Filing of New Action 
Mother contends the family court erred in refusing to find Father in contempt when he filed a new action in family court without first seeking formal mediation.  We disagree.  
The agreement states in pertinent part: 

 Both parties agree that should problems, issues or concerns arise they will first seek the advice of a child psychologist/therapist, return to mediation and upon last resort return to the Family Court to resolve the visitation issues related to the child.  

and further states: 

 The parties agree that if any disagreement should arise concerning this Agreement that cannot be settled directly between themselves by negotiation, they will first attempt in good faith to mediate the dispute with the services of a professional mediator of mutual choice.  

However, the agreement does not state that a party cannot file an action prior to mediation.  The agreement states that the parties shall return to family court only as a last resort.  Fathers action raised the issues and prompted the mediation process.  So although Father did file an action, the result of that filing was that mediation was set as contemplated by the agreement.  Accordingly, we find no error in the family courts ruling finding Father was not in contempt for filing his action.  
AFFIRMED.
GOOLSBY, STILWELL, and SHORT, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] This issue is not raised on appeal.